THE EXCHANGE BANK, *Appellant*, v. TRACY.

1. **Surviving Partner**: POWER TO BIND ESTATE OF DECEASED. A surviving partner has no power to bind the estate of the deceased partner by new contracts, unless expressly authorized so to do by the deceased either by will or contract.

2. In the present case there was no such authority.

3. ———: CONTINUATION OF OLD FIRM. A clause in a will providing for the continuation of a firm of which the testator was a member, does not, of itself, continue the old firm or create a new one. To give it effect, the surviving partner must assent and continue the business with that understanding and intention.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*B. R. Dysart* for appellant.

Tracy, Jr., had authority to continue the business, and bind the estate of the deceased. *Pitkin v. Pitkin*, 7 Conn. 307; *Burwell v. Mandeville*, 2 How. 560; *Edwards v. Thomas*, 66 Mo. 468; *Alexander v. Lewis*, 47 Texas 481; Story Part., §§ 195, 196, 201. Judgment should have been rendered against the administrator, leviable out of the partnership estate. *Asbury v. McIntosh*, 20 Mo. 279.

*Jas. L. Berry* and *Jas. M. Roberts* for respondent.

The authority to continue must be express. Story Part., (4 Ed.) § 243; *Pitkin v. Pitkin*, 7 Conn. 307; *Burwell v. Mandeville*, 2 How. 560; *Kirkman v. Booth*, 11 Beav. 273; 3 Redfield Wills, (2 Ed.) 257; *Price v. Mathews*, 14 La. An. 11; *Wightman v. Townroe*, 2 Maule & S. 413; *Webster v. Webster*, 3 Swanst. 490; *Washburn v. Goodman*, 17 Pick. 519. No funds in the hands of administrator, no judgment against him. *Roosvelt v. McDowell*, 1 Kelly (Ga.) 489.

MARTIN, C.—The controlling question in this case is, whether the estate of a deceased person can be subjected to the payment of a note executed and delivered after his death by his surviving partner in the name of the old firm.

It seems that B. N. Tracy, Sr., on the 1st day of January, 1872, entered into a copartnership with his son, B. N. Tracy, Jr., under the firm name and style of "B. N. Tracy & Son," for the purpose of carrying on a banking and brokerage business in the City of Macon. In the articles of agreement it was provided that the partnership might be terminated at any time by either party giving the other notice to that effect, and that upon dissolution the capital put in by each party was to be returned to him, and the remaining assets were to be equally divided. The profits were to be equally divided. Under this agreement the business was conducted till November, 1873, at which

time B. N. Tracy, Sr., died, leaving a will which was subscribed and attested on the 10th day of November, 1873.

On the 20th day of November, 1873, B. N. Tracy, Jr., using the old firm name, published a notice in the Macon City papers addressed to the patrons of the bank to the effect that: "The decease of the senior member of our house will in no way affect its resources, arrangements having been made to keep its capital intact. The well known conservative policy of our house, with its ample capital employed, will, we trust, continue to be duly appreciated by you. Soliciting your continued patronage, we are your obedient servants." Other notices of similar import were made to the public, and circulated among the patrons of the bank.

The will was probated on the 2nd day of December, 1873, at which date B. N. Tracy, Jr., became executor of B. N. Tracy, Sr. At the same time, as surviving partner, he became administrator of the partnership estate of "B. N. Tracy & Son." After various specific devises the testator provided in his will as follows: Item seventh. "My executor is hereby directed and required to pay all my just debts and funeral expenses, the following debts in the following manner, to-wit: One note for $2,000, payable to Benj. N. Tracy, Jr., the 1st day of January, 1874, and one for $1,000, payable to B. N. Tracy & Son, on the 1st day of January, 1874, I desire shall be paid out of my current account with the bank of B. N. Tracy & Son. One note to B. N. Tracy, Jr., for $3,000, due April 1st, 1874, to be paid when due by transfer of that much of my stock in said bank to said B. N. Tracy, Jr., and one for $3,000, payable to B. N. Tracy, Jr., the 1st day of July, 1874, to be paid out of my current account with said bank, and if no current account at that time, to be paid out of such moneys belonging to my estate as may then be on hand. All devises and bequests herein made being subject to my debts. Item eighth. In the year of our Lord 1880, I desire and it is my wish that all the rest and residue of my estate be

The Exchange Bank v. Tracy.

divided among my wife and children, as follows : To my daughter Bettie, $2,500; to my executor, $3,000, to hold for the use and benefit of my wife while she shall live, the interest whereof to be paid to her annually; and the balance of my estate, if any, equally between my four sons and my daughter Bettie."

On the 15th day of January, 1874, B. N. Tracy, Jr., filed in the probate court two inventories, one as executor of the estate of B. N. Tracy, Sr., which does not contain any allusion to the partnership assets, except mention of a debt due from " B. N. Tracy & Son " in the sum of $364.87 ; the other as surviving partner of the firm of B. N. Tracy & Son, showing its net assets to be of the par value of $36,653.14.

The banking business was conducted by B. N. Tracy, Jr., under the old firm name. It is claimed by plaintiff that this was a continuation of the old firm, with the executor as successor of B. N. Tracy, Sr.; while the defendants insist that the business, after the decease of B. N. Tracy, Sr., was conducted by his son on his individual responsibility, and that he had no authority to bind either the general or partnership estate of the deceased, for any debt contracted after the decease.

In January, 1875, B. N. Tracy, Jr., filed in the probate court a statement of the condition of the firm of " B. N. Tracy & Son," signing it as surviving partner. At the same time he also filed, as executor of B. N. Tracy, Sr., a report or annual settlement of the estate, in which, it appears that he has charged himself with what is denominated " dividends " from " B. N. Tracy & Son," amounting to $1,497.20, for the years 1873 and 1874.

The note sued on in this case was dated August, 1875, payable sixty days after date to the plaintiff, in the sum of $9,000, with interest at ten per cent after maturity, signed " B. N. Tracy & Son." It contains indorsements of credits in August and September, 1876, in the aggregate of $6,000, leaving a balance of $3,000 with interest.

About the 5th day of September, 1876, B. N. Tracy, Jr., failed in the business conducted by him to that time, and left the State. On the 18th day of September, his letters and authority as executor of B. N. Tracy, Sr., and as administrator of the partnership of " B. N. Tracy & Son," were revoked, and Philip Trammel, a defendant herein, was appointed administrator *de bonis non*, with the will annexed, of B. N. Tracy, Sr. He was also appointed to take charge of and administer the partnership estate of B. N. Tracy & Son. The new administrator testifies that no assets of either the individual estate of B. N. Tracy, Sr., or of the partnership estate of B. N. Tracy & Son have ever come into his hands. There was evidence tending to show that the widow and heirs of B. N. Tracy, Sr., always regarded him as conducting the business on his individual responsibility.

The court, trying the case without jury, refused to give at the instance of plaintiff the following declarations of law :

1. By the terms of said will the testator's capital stock in the Banking House of B. N. Tracy & Son, and its proceeds, were left remaining in the company, and the executor was authorized to continue said banking business till the year 1880.

2. If the executor did, in fact, carry on the said banking business after the death of the testator, using the capital stock of the testator as a part of the capital of said bank until after the note sued on was given, and said note was given in the due course of said banking business, then the finding should be for the plaintiff against the defendant, B. N. Tracy, Jr., and against the defendant, Philip Trammel, administrator *de bonis non*, to be satisfied out of the property and effects of the firm of B. N. Tracy & Son, in his hands for the balance due on said note.

3. Upon the facts as found by the court, the plaintiff is entitled to recover and have judgment on said note for the balance due thereon, against the defendant Trammel,

as administrator *de bonis non,* to be satisfied out of the property and effects of the firm of B. N. Tracy & Son.

The court gave the following declaration of law asked by defendants:

2. That in order to bind the individual estate of B. N. Tracy, Sr., deceased, for the debts contracted by his executor in the banking business, the authority so to bind it must clearly and expressly appear from the testator's will, and unless such authority so appears, the finding must be for the defendants named in the first instruction herein.

And thereupon judgment was rendered in favor of all the defendants, except B. N. Tracy, Jr., who made default and suffered judgment in the full amount. The plaintiff brings the case up on appeal.

I. From the petition and declarations of law asked by plaintiff, it is apparent that the object of this suit was to obtain a judgment against the personal representative of B. N. Tracy, Sr., which should be leviable out of his general estate, or his interest in the partnership estate, on account of a debt incurred in the old firm name nearly two years after his death; thus imposing on his estate an obligation contracted by his representative after his death in like manner as if it had been incurred by him while living.

Death operates as a dissolution of a partnership. The law has never been otherwise. The right of a surviving partner to bind it by contracting further obligations ceases at once. The estate of a deceased person becomes liable at once for the obligations left by him undischarged, and his personal representatives have no power to impose upon it any new burdens. Notwithstanding this, it may be said that a well settled exception to this rule is conceded, when the deceased person either in his will or in his contracts has clearly ordered otherwise, and has empowered his executor to bind his assets, either general or special, with the burden of new obligations to be incurred after his death. Story on Part., (4 Ed.) p. 538; Parsons Part., 438; 3 Redfield Wills,

(2 Ed.) p. 257, § 8; *Edwards v. Thomas*, 66 Mo. 468; *Alexander v. Lewis*, 47 Texas 481; *Scholefield v. Eichelberger*, 7 Pet. 586; *Burwell v. Mandeville*, 2 How. 560; *Kirkman v. Booth*, 11 Beav. 273. In admitting the exceptions, it will be found that the text writers and courts have very generally declined to recognize it in the absence of an express or positive provision of the deceased to that effect. In the language of Redfield, in his work on wills: "It seems scarcely needful to say here that the executor can have no justification for continuing the business of a partnership unless by the most unequivocal direction of the will, and then only where the estate is clearly solvent." 3 Redfield Wills, (2 Ed.) 257. In speaking of the character of the necessary directions or authority, the courts are in the habit of using the terms "express," "positive," "unequivocal" and "unambiguous."

I do not know that these expletives can add anything to the simple rule which denies the exception in the absence of some satisfactory provision or direction to the contrary. They seem to indicate the reluctance with which the courts permit any business to be conducted in the name of a deceased person with the funds of the estate; and this reluctance is very natural. It is contrary to the natural order of events, that a man's business should be conducted in his name after his death by the executor or administrator subject to the hazards and risks imposed upon it by them. Provisions to that effect are opposed to the whole spirit and scheme of our administration law, which contemplates that estates of the deceased should be settled within two years, and the assets distributed under the laws governing the descent and distribution of estates. Again, the carrying on of the business of a partnership after the decease of one of the partners, in obedience to a direction or contract of the deceased to that effect, is not in its true nature a continuation of the old partnership, although it is thus inaccurately termed. It is necessarily the creation of a new partnership; (Parsons on Part., 439,) and for that

reason ought not to exist in the absence of satisfactory proof of a direction of the deceased to that effect. The fact that the deceased may have contemplated the so-called continuation of the firm after his death as before, will not authorize the executor to continue the business in the absence of a direct provision to that effect. *Kirkman v. Booth*, 11 Beav. 273.

II. In this case there was no provision in the articles of partnership against dissolution or for continuation of the business. There was nothing in the nature of the business requiring a continuation, as sometimes happens when a firm is suddenly stopped in the middle or near the conclusion of some great enterprise. The contract provided for a dissolution on mere notice. There is no provision in the will directing such an important matter as the so-called continuation of the banking business till 1880. In my judgment the seventh and eighth clauses of the will do not constitute such a direction or authority. The eighth clause makes no mention of the partnership; it affects to set a day for a division of the rest and residue of his estate. The seventh clause purports only to direct the ways and means of paying some $9,000 of notes evidently connected in some way with the partnership. He directs that three of these notes, amounting to $6,000, be paid out of his current account in the bank, and the fourth one for $3,000, by transfer of so much stock in the bank. Provisions which relate to a method or mode of administration, are not always regarded as absolute or exclusive of all other means and ways which may recommend themselves to the executor for the best interests of the estate. I do not think the direction to pay some of these notes out of his " current account " in the bank and the other by a transfer of so much of his " stock " or capital in the bank, is equivalent to an order on the executor to continue the business of the firm on account of the deceased, as if he was living. He probably contemplated that his capital would be retained by the new firm, and that something in the way of

interest or profits would be placed to his account for the use of the capital. It certainly does not reach the sufficiency of an order or authority to continue the old business on account of the estate as if he were living.

III.   A clause in the will providing for the so-called continuation of the firm does not, of itself, continue the old or create a new firm.   The surviving partner must assent to it, and continue the business with that understanding and intention.

Now, it seems to me the facts of this case fail to show satisfactorily that B. N. Tracy, Jr., regarded the new firm as composed of any one but himself, in his individual capacity using the capital and money of the old firm.   His notice to the patrons of the bank, wherein he speaks of "arrangement having been made to keep the capital intact," would seem to imply that he intended to conduct the business for himself under the old firm name, and that he had made arrangements to retain the capital in the business. He took charge of the whole partnership estate as surviving partner, and carried it into the probate court as such. This act naturally excludes the idea of conducting the business on the responsibility of any one else.   His accounts as surviving partner seem to indicate that he had the approval of the probate court for continuing the business, but only on his own responsibility.   The credit of dividends which he takes in his account as executor, shows that he accepted something from the partnership estate for the use of the capital there.   The law requires an executor to charge himself with the interest or profits received by him on funds of the estate, although used in unauthorized adventures.   He should bear the losses and return the profits to the estate.

The distributees of the estate do not seem to have regarded the executor as conducting the business in any other way than on his individual responsibility, although having the use of the funds of the estate.

For these reasons, I think the evidence fails to disclose

any authority to the executor from the deceased to burden either his general or partnership estate, with new obligations like the one sued on, and that the action of the court in refusing and giving instructions, and in rendering the judgment appealed from is correct and proper; accordingly the judgment is affirmed. PHILIPS, C., concurs; WINSLOW, C., absent.

HENRY, J., took no part in this case.