MICHAEL, *Appellant*, v. LOCKE *et al.*.

1. **Guardian of Insane Person**: ESTATE, AUTHORITY AS TO. A guardian of an insane person has no authority to subject the estate in his charge, to the risks and hazards of any trade or business undertaking.

2. ———: STATUTE: PROBATE COURT. Such power is not conferred on the guardian by statute, nor have the probate courts the equitable jurisdiction to give it.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED,

*James Taussig* for appellant.

A guardian of an insane person has power to continue the business of his ward, if such continuance is essential for the preservation and protection of the estate of the insane person. 1 Wag. Stat., § 40, p. 716; *Ib.*, § 19, p. 714; *Reed v. Wilson*, 13 Mo. 28. Trustees, executors and administrators are personally liable on contracts entered into by them for the benefit of the trust estate, in the absence of an express provision in the agreement to the contrary. *Noyes v. Blakeman*, 6 N. Y.; *News v. Nicoll*, 19 N. Y. S. Ct. 431; 17 Alb. L. J. 292; *Meyer v. Cole*, 12 John. 549; *Demott v. Field*, 7 Cow. 78; *Reynolds v. Reynolds*, 3 Wend. 244; *Ferrin v. Myrick*, 41 N. Y. 315; *Austin v. Munroe*, 47 N. Y. 361. A trustee or guardian has a lien upon the estate for all money properly advanced and expended by him in the administration of the trust, and would, therefore, be entitled to be re-imbursed out of the estate for all money paid by him on contracts made for his benefit. Perry on Trusts, (2 Ed.) § 907. No right against the estate can exist at law. *Haversham v. Huguein*, R. M. Charlton 378 (Law J.) If, however, the trustee or guardian is insolvent, and a contract has been made with him, which was necessary and proper in the administration of the trust, and of which the estate, the *cestui que trust*, or ward, has received the benefit, the creditor may proceed against the estate itself to enforce payment of his demand. *Poole v. Wilkinson*, 42 Ga. 539; *Owens v. Mitchell*, 38 Tex. 588. See *Copley v. O'Neil*, 39 How. Pr. 47; *Westmoreland v. Davis*, 1 Ala. 293.

*George A. Castleman* for respondent.

Jones, the former guardian, to whom the sales of the wood were made, was personally liable therefor at law. *Blakely v. Bennecke*, 59 Mo. 193; *Hills v. Bannister*, 8 Cow. 31; *Sumner v. Williams*, 8 Mass. 162; Hill on Trustees, (3 Am. Ed.) 533, 534; Schouler's Dom. Rel., (2 Ed.) 457;

*Forster v. Fuller*, 6 Mass. 58. The prosecution of the business by Jones with his ward's estate, was unlawful, and a breach of duty on the guardian's part. *Western, etc., v. Jones*, 8 Mo. App. 373; *Merritt v. Merritt*, 67 Mo. 156. Plaintiff cannot come in upon the trust fund. Hill on Trustees, (3 Am. Ed.) 533; *Warrol v. Harford*, 8 Ves. J. 8. In all cases cited by plaintiff's counsel, the distinct ground of equitable interference was, that the debt had been incurred for the benefit of the trust estate, and for the actual betterment thereof, and *in obedience to and advancement of the objects of the trust.*

MARTIN, C.—This was a suit in equity for the purpose of enforcing against the estate and assets of an insane person, a demand incurred by his guardian after he had taken charge of the estate.

The circuit court sustained a demurrer to the petition, and the plaintiff declining to plead further, final judgment went against him. The court of appeals affirmed the judgment, and the plaintiff has appealed to this court. The only question for us to determine, involves the action of the circuit court in sustaining the demurrer.

It is alleged in substance that Joseph H. Locke was adjudged insane by the St. Louis probate court, and that one Robert L. Jones was, by said court, appointed as his guardian, who assumed control and management of his estate and person; that prior to said appointment said Locke had been engaged in the business of buying and selling and manufacturing lime and cement, and had built up a large and profitable trade at great expense of time, labor and money; that for good and sufficient reasons, it was deemed best, for the interest of Locke and his estate, by the guardian, wife and family, that the business so established should be carried on as before, so as to prevent a sacrifice of property, and afford an income for the maintenance of himself, wife and family; that in pursuance of said determination, the guardian did carry on the business from the date of his ap-

pointment; that in conducting said business it became necessary to purchase, from time to time, large quantities of wood for the purpose of heating lime-kilns; that the guardian had no money on hand for that purpose, and was obliged to purchase wood to be paid for in the future; that plaintiff agreed to furnish and did furnish to said guardian wood in the value of $6,525.35, and that after deducting all credits and payments, there remained due to plaintiff on account thereof $2,932.25, as disclosed in the exhibit filed; that all of said wood was necessary for the purpose of carrying on the said business, and to prevent loss and sacrifice of property to the estate, and that the estate derived great actual benefit therefrom, in an amount greater than the price of the wood; and that it was understood and agreed between plaintiff and the guardian, that the plaintiff should have a lien on the assets of the estate for the wood so furnished. It is added that said Jones, as guardian, has been relieved of his office by order of court, and that Lancaster has been appointed as his successor, and that said Jones is insolvent, and that his successor refuses to pay the demand sued for. It concludes with a prayer that the demand be adjudged a lien upon the estate of said Locke, and that the present guardian be ordered to pay the same out of the assets of the estate held by him, and that in default of payment, so much of the estate be sold as may be necessary to satisfy the demand, and for general relief.

The counsel for plaintiff submits an able and exhaustive brief in support of the petition. But I am unable to agree with him about the propositions he advocates. I have reached the conclusion that the courts below were right in holding that the petition was wanting in equity. The guardian of an insane person is a trustee, and his conduct in the management and control of the estate committed to his charge, except as otherwise provided in the statutes, is governed by the law of trusts. As such trustee, he has no authority to subject the estate in his charge to the risks and hazards of any trade or business undertaking. Such is the

general doctrine on this subject. When he employs the assets of the beneficiary in trade or speculation, or in the establishment or continuance of a manufacturing business, as was done in this case, he does it in violation of the trust by which he holds them.

I am not aware that equity has ever approved any departure from this rule, in the absence of express authority to that effect. When a will or other instrument creating or defining the trust authorizes such employment, the trustee is justified in making contracts which shall be binding upon the assets in his hands, provided he has strictly pursued the terms of his authority. We have had occasion recently to consider the right of an executor to bind the assets of his testator, by subjecting them to the risks and hazards incident to a continuance of the business of the testator after his decease; and we held that in the absence of express authority from the testator in his will, or other binding instrument, the executor was not possessed of any such authority. *Exchange Bank v. Tracy*, 77 Mo. 594. I will not pretend to say that a court of equity having charge of an estate may not, in the exercise of its ancient and rightful jurisdiction, furnish authority to the receiver or trustee managing the estate, to continue the prosecution of a trade or business enterprise.

In such case the authority of the receiver or trustee would rest upon the order of the court. Our probate courts do not possess such equitable jurisdiction over the estates held by officers accounting before them. Neither is it alleged in the petition that the probate court assumed to give to the guardian in this case any authority to continue the business of manufacturing and selling lime which had been conducted by Mr. Locke before he suffered the loss of his reason. The fact that the plaintiff has found it necessary to resort to a court of equity, is a persuasive argument against the assumption that the probate court ever authorized or had authority to authorize the guardian to incur the lien which the plaintiff now asks to be en-

forced against the estate. Neither has it been an uncommon thing for equity to adjudge a lien against funds in the hands of a trustee, for expenditures incurred in protecting, and saving them against loss and damages, where the expenditures have been incurred solely with that view, and especially when they have resulted in a benefit to the funds for which they were incurred. No such case is contained in this petition. The guardian continued the manufacturing business of Mr. Locke for the purpose of affording a better income to his beneficiary and the family. It is, also, alleged that this was necessary to save and preserve the assets from sacrifice; in other words it was necessary to commit a breach of trust in order to preserve the trust property. Equity cannot recognize the necessity of the situation as sufficient to confer such an extraordinary power. I may add here that something more than is stated in this petition is required to make apparent the propriety of subjecting the assets to the hazards of a manufacturing business in order to save them from possible loss or depreciation. Whenever trustees have been permitted in equity to burden the estates in their charge with the lien of obligations incurred by them for the benefit of the estates it will be found that such obligations have been invariably within the scope and powers of their trusts, and not in open violation thereof. To approve and enforce against the trust estate a debt incurred by the trustee in open violation of the trust, merely because it has turned out to be beneficial to the estate, would practically dispense with the time-honored restraints and safeguards, which equity has been so solicitous to maintain for the protection of trust estates. A relaxation of such restraints and guards would invite every trustee to employ the trust funds about as he pleased, and make his lawful authority dependent upon the outcome of his enterprise or speculation. But it is argued by counsel for plaintiff that the guardian of an insane person, from the very nature of his trust, is possessed of greater powers in respect to the em-

ployment and use of the trust funds, than the administra-
tor or executor of a deceased person, or the guardian or
curator of a minor.  It is suggested that the insanity may
be only temporary as was expected in this case, and that a
restoration of mind would enable the beneficiary to resume
his discontinued business, and from this is deduced the
authority to keep up his business as he left it, a result not
possible to the other trustees mentioned.  This reasoning
is not more than plausible.  Undoubtedly it would be well
for the lunatic to resume his business upon being restored
to reason.  But this is impossible; and the plaintiff's ar-
gument does not assume to do this.  It assumes to restore
to him not his business as he left it, but the business car-
ried on and left by his guardian, burdened with debts and
obligations which perhaps he would never have thought of
incurring.  The business as thus resumed by him may or
may not be a fair substitute for the business he left.

The statute which defines the duties and powers of
guardians of insane persons, by leaving out, impliedly
excludes the power claimed by plaintiff.  R. S. 1879 §§
5800, 5804.  The whole scheme of administration of the
estates of insane persons as disclosed in the statutes, seems
to negative the right of the guardian to embark in trade
or business with the funds of his beneficiary.  When
the necessity for money to pay his debts or maintain his
family arises, the law provides for a lease or sale of the
assets.  R. S. 1879, §§ 5806, 5808.  There is nothing in
the statutes to distinguish his general authority over the
assets, from the authority of a guardian or curator of a
minor, and his general duties seem to be about the same.

The power of the probate court to make orders for
"the management of the estate" out of the proceeds of
the estate, does not distinguish him from the guardian of
a minor in respect to the employment of the funds.  R.
S. 1879, § 5805.  The curator of a minor's estate has " the
care and management of the estate of the minor subject to
the superintending control of the court."  R. S. 1879, §

2578.   The learned counsel for the plaintiff does not pretend that a minor's guardian or curator can carry on a trade or business for the benefit of his ward.

In holding that the assets of this estate are not legally subject to the lien of plaintiff, we have not found it necessary to consider the question, as to whether the guardian made himself liable individually therefor.   He is not before us in this case, and the decision of the court of appeals on that or a similar issue in another case cited by counsel is not before us for review.   Accordingly the judgment of the court of appeals affirming the judgment of the circuit court is affirmed.   All concur.