SARAH A. WILLIAMS ET AL., Plaintiffs in Error, v. THE JACKSON COUNTY PATRONS OF HUSBANDRY, AND JOHN P. JONES, Defendants in Error.

Kansas City Court of Appeals, July 10, 1886.

1. CORPORATIONS—TRANSACTIONS WITH STOCKHOLDERS AND DIRECTORS—HOW CONSIDERED BY THE COURTS.—A stockholder and director may contract with, and make loans to, the corporation, of which he is a constituent member, and the courts are open to him for the enforcement of such contracts as a stranger to the corporation. But, on account of his *relation* to the corporate body, *where the rights of third parties are concerned*, courts of equity will narrowly scan and closely scrutinize such transactions, and cast upon *such* creditor the *onus* of proving the *bona fides* of the debt. Such stockholder and director may also loan money to, and take security from, an *embarrassed* corporation, which will be upheld both in courts of law and equity. So corporations may make an assignment for the benefit of creditors pursuant to statutory regulation, and may, *in good faith*, prefer one creditor to another.

2. ———  ——— DIFFERENT RULE AFTER INSOLVENCY—TRUST FUND FOR BENEFIT OF ALL CREDITORS.—The application of these principles is restricted to a "going concern." After the directors have voted their concern to be insolvent, and have determined to wind up its affairs with a view to payment of its debts, they cannot turn over the assets to one of the directors in payment of his debt to the exclusion of the other creditors of equal right. Where such corporation has been declared insolvent by its own board of directors, and it ceases further to prosecute the object of its creation, except for the purpose of *administering its assets*, the directors take upon themselves, or are clothed with, the office of trustees for the assets, with the stockholders and creditors of the concern as *cestuis que trust*, and, therefore, cannot secure to themselves any advantage, by way of preference, over other creditors of equal right. While a creditor, as one of the *cestuis que trust*, may be a trustee, yet, he

has no power to *prefer* his own claim, but must *take equally with* *the others.*

3. —— PARTIES TO ACTIONS AGAINST—DEFECT OF PARTIES—CASE ADJUDGED.—A single creditor should be permitted to file a creditor's bill, as in this case, without having to ascertain who all the other creditors are, and secure their co-operation, or make them parties *nolens volens.* The other creditors might, if they desire, *intervene,* and receive of the fund distributed *pro rata,* but *unless* they do *voluntarily,* the creditor suing is entitled to the fruit of his victory. *In this case,* if defendant director is a *bona fide* creditor, the fund should be *ratably* distributed between him and the plaintiffs.

ERROR to Jackson Circuit Court, HON. F. M. BLACK, Judge.

*Reversed and remanded.*

Statement of case by the court.

The petition in this case is as follows : " Plaintiffs state that they are now, and were, at and prior to the dates herein mentioned, husband and wife, and that the defendant, the Jackson County Co-operative Association of the Patrons of Husbandry is now, and was at and prior to the time herein stated, a private business corporation, duly created and organized under and by virtue of the laws of the state of Missouri, and engaged in the business of buying and selling goods, wares, merchandise, produce, and all articles pertaining to a general mercantile and commission business, at the city of Independence, and county of Jackson. Heretofore, to-wit, on the twenty-fifth day of January, 1881, the defendant corporation was justly indebted to plaintiff Sarah A. Williams, in the sum of five hundred dollars, and on the twentiet day of November, 1883, the said Sarah A. Williams and her said husband obtained a judgment for the full amount of said indebtedness, and for costs of suit. Said judgment was duly rendered by the circuit court of Jackson county, at the City of Kansas, in favor of said Sarah A. Williams and Almeron C. Williams, and against said defendant corporation, for said sum of five

hundred dollars, together with —— dollars costs. Said judgment still subsists in full force and effect, and remains due and unpaid.

"Heretofore, to-wit, on the sixth day of June, 1881, while said indebtedness was still existing against said corporation and remained unpaid, the defendant, John P. Jones, was a stockholder in, and was duly elected a trustee and director of, said corporation, and it became his duty, with the other trustees and directors, to take charge of, manage and control the business of said corporation then being transacted, and he did, with the other trustees and directors, take charge of said business. At this time said corporation was indebted to said Jones for money loaned in the sum of five hundred dollars. While said Jones was such trustee and director, said corporation was insolvent, and on the twelfth day of August, 1882, said corporation by and through the act of its board of trustees, determined and resolved to close out the business of said corporation, and sell all of its stock and fixtures, collect accounts, and apply the proceeds to the payment of its debts. Accordingly, said corporation sold all of its goods then on hand for a large sum of money, viz., $2,000; and upon receiving the proceeds of such sale, said corporation, through its board of trustees and directors, paid out of such proceeds the sum of two hundred dollars to said trustee and director, J. P. Jones, in preference to the claims of other creditors, and to the exclusion of the debt and demand of this plaintiff then due and unpaid. The said Jones and the other directors and trustees then and there well knew that said corporation was insolvent and unable to pay all of its debts, and well knew that its assets and the money so paid to said Jones was a trust fund to be held by them for the benefit of this plaintiff as a creditor of said corporation.

"And on the second day of December, 1882, said corporation, through its trustees and directors, while it was insolvent, as aforesaid, and while its directors and said Jones well knew of such insolvency, intending to prefer

said Jones as its creditor, turned over and delivered to said Jones a large number of book accounts, and notes, and bills receivable, then outstanding and due said corporation, to the amount of five hundred dollars, to said Jones, as collateral security for the debt of said corporation to said Jones. Said sum of two hundred dollars and said notes, accounts and bills receivable, were, at the time aforesaid, a part of the assets of said corporation, and at and prior to the time the same were delivered to said Jones, said corporation was wholly insolvent, and all of the assets of said corporation were a trust fund in the hands of its trustees and directors, and the preference given to said Jones, as aforesaid, was fraudulent, and void in law as against the claim of this plaintiff, a creditor of said corporation. Said Jones still holds and retains said portion of the assets of said corporation, and has converted the same to his own use, under color of said pretended and fraudulent preference, and refuses to apply the same to the payment of the just debts of said corporation, wherefore plaintiffs ask that the said pretended preference be set aside and held for naught, and said Jones be compelled to account for all assets and moneys received by him while trustee and director of said corporation, as aforesaid, and that he be compelled to pay the same into court, to be applied to the satisfaction of plaintiff's judgment against said corporation, and for such other and further relief as to the court may seem just and equitable."

To this petition defendant Jones demurred, on the ground that it did not state facts sufficient to constitute a cause of action, in that it appears, from the petition, that at the time the said corporation turned over the money, notes, and accounts, to said Jones, it was justly indebted to him in such sums.

The court sustained the demurrer, and plaintiffs declining to plead further, judgment was entered for defendant, from which plaintiffs prosecute this writ of error.

J. V. C. KARNES and WASH ADAMS, for the plaintiffs in error.

I. The directors are agents with power to *carry on*, not to wind up, the corporate business. When the corporation ceases to be a "going concern," the function of the directors is at an end. At the moment of hopeless insolvency the interest of the shareholder vanishes, and that of the creditor attaches. *At this point* the directors cease to be agents, and if they still retain possession of corporate assets, they are regarded, in equity, as *trustees for the creditors*. Morawetz on Priv. Corp., sects. 240, 581; *Singley v. Insurance Co.*, 45 Mo. 110; *Eppright v. Nickerson*, 78 Mo. 484; *Kochler v. Hubby*, 2 Black (U. S.) 717; *Rollins v. Clay*, 33 Me. 132; *Abbott v. Railroad*, 33 Barb. (N. Y.) 580.

II. A corporation has no existence independent of its shareholders. The duties of the corporation are simply the duties of the persons who compose it. Defendant Jones was not only a director, but also a shareholder of the corporation. *He was the corporation.*

III. The officers of a corporation, even when it is a "going concern," can deal with it only *sub modo*. All business transactions between them are voidable, and are not upheld *unless* shown to be fair and free from suspicion. *Chouteau v. Allen*, 70 Mo. 338; *Patrick v. Boonville G. L. Co.*, 17 Mo. 469; *Lingle v. Hogan*, 45 Mo. 109; *Brewster v. Stratman*, 4 Mo. App. 41; *Smith v. Lansing*, 22 N. Y. 523; *McAllen v. Woodcock*, 60 Mo. 174.

IV. The capital of a corporation constitutes a *trust fund* charged primarily with the payment of the corporate debts. *Wood v. Dummer*, 3 Mason C. C. (U. S.) 308; *Eppright v. Nickerson*, 78 Mo. 490; *Powell v. Railroad*, 42 Mo. 68; *Howe v. Robinson*, 20 Fla. 352; *Adler v. Brick Co.*, 13 Wis. 57; *Jones v. Mfg. Co.*, 38 Ark. 25; *Sawyer v. Hoag*, 17 Wall. (U. S.) 621; *Haskell v. Sells*,

14 Mo. App. 91; *Turnbull v. Lumber Co.*, 8 Am. & Eng. Corp. Cases, 268; *Railroad v. Howard*, 74 U. S. 392.

V.   Mere insolvency does not destroy the power of management; nor is a corporation prohibited from preferring one creditor to another.   But the test is whether the acts done are intended to further corporate business, or with a view to corporate dissolution.   The power of management ceases at the point of *hopeless insolvency.* Morawetz on Priv. Corp., sects. 559–579.

VI.   The directors of a corporation which has become hopelessly insolvent, remaining in possession of corporate assets, are *quasi* trustees thereof for the *equal* benefit of all the creditors.   Morawetz on Priv. Corp., sect. 581; *Sawyer v. Hoag*, 17 Wall. (U. S.) 610; Thomp. on Liability, Officers, etc., Corporations, sect. 23, p. 397. And they cannot lawfully appropriate the corporate assets in payment of their own debts, to the exclusion of other creditors of the corporation.   *Richards v. Insurance Co.*, 43 N. H. 263; *Sawyer v. Hoag*, 17 Wall. (U. S.) 610; *Marr v. Bank W. Tenn.*, 4 Cold. (Tenn.) 484; *Hopkins, etc., App.*, 90 Pa. St. 69; *Lamb v. Laughlin*, 25 W. Va. 300; *Foster v. Mullanphy P. W. Co.*, 16 Mo. App. 157.

VII.   "Where like statutes (such as those of Missouri) prevail concerning dissolved corporations, the *insolvency* of the *concern known* to the *president* and *directors*, works a *practical dissolution*, and they must take the statutory consequences, and that is the only safety there is in regard to this peculiar class of corporations under the Missouri law."   Per Treat, J., District Judge United States, in *Sprague Mfg. Co. v. Murphy Furnishing Goods Co.*, 26 Fed. Rep. 572; *Savings Association v. Kellogg*, 52 Mo. 590; *Perry v. Turner*, 55 Mo. 425; *Moore v. Whitcomb*, 48 Mo. 548; *Chouteau v. Allen*, 70 Mo. 336; *Homer v. Carter*, 17 Fed. Rep. 362.

A. COMINGO, and YATES & WALLACE, for the defendants in error.

I.   A corporation, even when in a failing condition, can make an assignment or prefer any one or more of its creditors to the same extent as an individual can, under like circumstances. *Shockley v. Fisher*, 75 Mo. 501; *St. Louis v. Alexander*, 23 Mo. 524; *Dana v. Bank*, 5 W. & S. 147; *Catlin v. Eagle Bank*, 6 Conn. 232; *Warner v. Mower*, 11 Vt. 390; *State v. Bank*, 6 Gill & J. (Md.) 219: *Ringo v. Brisco*, 13 Ark. 563; *Goodwin v. McGehee*, 15 Ala. 235; *Cary v. Gilis*, 10 Ga. 29.

II.   The corporation has the right to prefer a stockholder, if a *bona fide* creditor. *St. Louis v. Alexander*, 23 Mo. 527; *Kitchen v. Railroad*, 69 Mo. 224; *Foster v. Mullanphy, etc., Co.*, 16 Mo. App. 150; *Buel v. Buckingham*, 16 Iowa, 284; *Smith v. Sheary*, 47 Conn. 45; *Ponderville Co. v. Clark*, 25 Conn. 101; *Sargent v. Webster*, 13 Metc. (Mass.) 497; *Whitwell v. Warner*, 20 Vt. 425; *Oil Co. v. Mabry*, 91 U. S. 587; *Burr v. McDonald*, 3 Gratt. (Va.) 216; *Stratton v. Allen*, 1 S. E. Green Ch. (N. J.) 232; *Dunscomb v. Railroad*, 84 N. Y. 199; *Planter's Bank v. Whittle*, 8 Va. Law Jour. 597; *Railroad v. Claghorn*, 1 Speers Ch. (S. C.) 562; *Poole & Jackson's Case*, 26 Eng. R. 142; *Harts v. Brown*, 77 Ill. 226; Angell & Ames on Corp. (11 Ed.) sect. 191.

III.   Being an officer in the corporation did not deprive Jones * * * of availing himself of his superior knowledge and the advantages of his position to obtain security for a payment of his debt. His advantage is one which results from his position; and is known to every person who deals with and extends credit to a corporation. *Buel v. Buckingham*, 16 Iowa, 284; *Whitwell v. Warner*, 20 Vt. 444; *Sargent v. Warner*, 13 Metc. (Mass.) 497.

IV.   "A private person could make a transfer of all his property in payment of one creditor, if it was done in good faith. That a corporation could do like-

wise, through the agency of its directors ; that such disposition would be binding, and would *not have* the effect to end or *dissolve* the corporation is clear, upon the authorities." Per Dillon, J., in *Buel v. Buckingham*, 16 Iowa, 296. The doctrine of this case is approved and upheld in this state. *Kitchen v. Railroad*, 69 Mo. 242 ; *Lingle v. Ins. Co.*, 45 Mo. 109 ; *Eppright v. Nickerson*, 78 Mo. 484; *Chouteau v. Allen*, 70 Mo. 338 ; *McAllen v. Woodcock*, 60 Mo. 174 ; *Patrick v. Gas Light Co.*, 17 Mo. App. 569 ; *Foster v. Mullanphy, etc., Co.*, 16 Mo. App. 157.

V. If the directors of an insolvent company hold *all* the assets in trust to be distributed among *all* the creditors equally, then this action cannot be sustained. *That* would require a proceeding in equity by all the *cestuis que trust*, that is, all *the creditors*, to subject all the property to a *pro rata* distribution ; while this is an action by *one* only, on the theory that the preference to Jones was fraudulent, and asking a judgment against him for the whole amount he received, *for plaintiff's use alone.* This is a denial of plaintiff's own position, that it is a *trust fund* for *equal* distribution among *all* creditors.

PHILIPS, P. J.—The question to be answered on this record is, can a managing director and stockholder in an insolvent corporation, after it is ascertained and officially declared by its managing board to be insolvent, and they resolve to wind up its affairs with a view of discharging its debts, as far as they may, be preferred as a creditor to the exclusion of other creditors of the concern ? The trial court answered this question in the affirmative.

It may be conceded that the recognized doctrine is, that a stockholder and director may contract with, and make loans to, the corporation, of which he is a constituent member, and the courts are open to him for the enforcement of such contracts as to a stranger to the corporation. But, on account of his relation to the cor-

porate body., where the rights of third parties.are con-·cerned, courts of equity will narrowly scan and closely scrutinize such transactions. They will so far look upon them with suspicion as to cast upon such creditor the *onus* of proving the *bona fides* of his debt. ·*Patrick v. Boonville Gas Light Co.*, 17 Mo. App. 462, and cases cited.

It may be further conceded that such stockholder and director may, also, loan money to, and take security therefor from, an embarrassed corporation, which will be upheld both in the courts of law and equity. This should be so, as such officers often come to the aid of embarrassed corporations and lend them money to keep them going.

It may be further conceded that for civil purposes, corporations are deemed persons, and may make an assignment for the benefit of creditors, pursuant to statutory regulation. Nor do we purpose, by anything said in this discussion, to deny the right of an embarrassed corporation, in good faith, to prefer one creditor to another, as the result of securities given him under proper circumstances.

It will be found, generally, that when courts have spoken thus, it is in respect of what is sometimes termed, "a going concern;" a corporation doing business, though crippled and embarrassed, yet has vitality and hope in it. But, after a careful review of the multitude of authorities bearing on this question, and looking to the reason and justice of the matter, I am unable to recognize the right or policy of directors, after they have voted their concern to be insolvent, and de-·termined to wind up its affairs with a view to the payment of its debts, to turn over its assets to one of its number in payment of his debt, to the exclusion of the other creditors of equal right.

At common law, the dissolution of a corporation operated an extinguishment of its debts. Such an outrage upon common right called into action the inter-.position of the courts of equity, which declared the·

assets of such corporations to be a trust fund for the benefit of all the creditors, and it would follow the funds into whosesoever hands they passed, unless impressed with some superior equity in the hands of such third party.

This doctrine grew up out of the very necessities of the anomalous character of these artificial beings, these legal entities. While possessing many attributes in common with natural persons, their constituent members are not liable for the corporation debts and undertakings. They act and move through their agents, their officers, who must be regarded as trustees for the stockholders, and for the creditors, *sub modo*.

The courts early held that the assets of such corporations were so far impressed with the character of a trust fund that the board of directors could not give them away, nor distribute them among the stockholders, to the prejudice of the corporation creditors. And, while recognizing the existence of the legal title to such property to be and remain in the corporation, as such, and without trenching upon the right of management of the funds by the directory, or in any degree breaking in upon and striking down its autonomy, the rule of equity has become paramount, in most of the courts of this country, and in the higher courts of England, that where such corporation has been declared insolvent by its own board of directors, and it ceases to further prosecute the object of its creation, except for the purpose of administering its assets, the directors take upon themselves, or are clothed with, the office of trustees for the assets, with the stockholders and creditors of the concern as *cestuis que trust*.

I know there are authorities of high character, which, in effect, hold that such corporations, through its directors, have the same right as natural persons to make preferences among their creditors, " of particular creditors or classes of creditors." *Ringo v. Brisco*, 13 Ark. 563; *Catlin v. Eagle Bank*, 6 Conn. 232; *Buell*

*v. Buckingham & Co.*, 16 Ia. 284 ; *Whitwell v. Warren*, 20 Vt. 452 ; *Sargent v. Webster*, 13 Met. 497 ; and, perhaps, others.

Morawetz, in his admirable treatise on Private Corporations (section 582), says : "It is submitted that this doctrine is wholly indefensible upon principle. It seems to have been first started in *Catlin v. Eagle Bank* (6 Conn. 232), a case in which the fundamental rule that the assets of an insolvent corporation constitute a trust fund, pledged for the security of creditors was denied. It is a doctrine which is at variance with the whole theory of the law concerning the rights of creditors of insolvent corporations, and it is contrary to the plainest principles of justice."

The seemingly broad doctrine announced in *Catlin v. Eagle Bank*, has been explained away to some extent in the later case of *Crandall v. Lincoln* (52 Conn. 108–9). O. the case of *Sargent v. Webster* (13 Met.) it is enough, for the purposes, of this discussion, to say, it is not in conflict, necessarily, with the conclusion we shall reach in this opinion ; for the preferred creditor there was not a director, and did not sustain the relation of trustee of the assets for the benefit of all the creditors. We concur in the justice of the criticism made of the case of *Buell v. Buckingham & Co.*, so much relied on by defendant, made by Mr. Justice Woods, of the supreme court of the United States, in *Lippincott v. Shaw Car Co.*, reported in the twenty-fifth Federal Report, 577 : "It may be said of the first (case, *supra*), in the language of one of the justices who joined in the decision, 'that there is no evidence that the corporation is insolvent, nor is there any evidence that all of the property of the corporation was taken.' " And this judge, in the same connection, speaking of other cases, says : "The preferences were given in fulfillment of agreements to indemnify the directors, who, upon the faith of such agreements, had assumed liabilities for, or given credit to, their respective corpora-

tions. In other cases the preferences were given to stockholders who were not directors or managers."

It is now a conspicuous fact, in the history of the progress of equity jurisprudence, throughout England and America, that the courts are generally yielding to the principle, that the directors and officers of an insolvent corporation are trustees of the assets for the benefit of all the creditors, and must manage and distribute such assets, after the ascertained and confessed insolvency, as any other trustees and agents of a trust fund ; and, therefore, they cannot secure to themselves any advantage, by way of preference, over other creditors of equal right. Morawetz Priv. Corp. 579 ; *Marr v. Bank*, 4 Cold. 471 ; *Koehler v. Iron Co.*, 2 Black 715 ; *Curran v. Arkansas*, 15 How. 306 ; *Richards v. Insurance Co.*, 43 N. H. 263 ; *Bradley v. Farwell*, 1 Holmes, 433 ; *Drury v. Cross*, 7 Wall. 299 ; *Gas Light Co. v. Terrell*, L. R. 10 Eq. 168 ; *Robbins v. Embry*, I. S. M. & M. Ch. 207, 258, 264 ; *Haywood v. Lincoln Lumber Co.* (Sup. Crt. Wis.) 26 N. W. Rep. 184 ; *Lippincott v. Shaw Car Co., supra* ; *Hopkins et al. Appeal*, 90 Pa. St. 60 ; *Lamb, Trustee, v. Laughlin*, 25 W. Va. 300.

The principle upon which this doctrine rests is admirably stated by Milligan, J., in *Marr v. Bank, supra :* "By the insolvency of the bank the corporation is rendered incapable of pursuing the objects for which it is created, without defrauding the public and existing creditors. Its officers or agents properly ceased to use its franchise after the insolvency was ascertained ; but their responsibility as to assets did not cease. They continued to hold them as before ; not for themselves or for the use and benefit of the stockholders, but for the creditors of the corporation. After the insolvency of the corporation, although the legal ownership of the assets may continue as before, the beneficial interest of the stockholders clearly no longer exists, as a state of insolvency presupposes that the capital and assets are insufficient to meet its liabilities. The stockholders.

having incurred no personal liability for the debts of the corporation, have, in point of fact, no interest in the disposition of the assets of the bank after its insolvency. In equity, as well as at law, the beneficial interest therein belongs to the creditors. The capital is the fund they trusted, and to which, with the after acquired property or assets of the corporation, they can alone look for indemnity. Both stand pledged for the payment of the corporation debts, and a court of equity will follow them into the hands of stockholders or other persons receiving them with notice, for the benefit of the creditors."

Even those judges who do not go to the extent above indicated, are forced to admit that upon the insolvency of such a corporation, and its cessation from business, its assets become a trust fund in the hands of the directors for the benefit of the creditors. When it is conceded that equity thus affixes to them the character and office of trustees of a trust fund, I am unable, on principle, to distinguish their trusteeship and agency from that of any other trustee or agent. The well recognized rule is, that when a trustee or agent receives money, generally for various creditors of equal dignity and right, to each of whom he is under the same legal and equitable obligation, he must apply the fund ratably among all the creditors. And it is equally clear law, that if such trustee or agent be himself a creditor he cannot apply the trust fund to the payment of his own claim to the exclusion of the other creditors. He must pay all *pari passu*. *Colby v. Copp*, 35 N. H. 434; *Richards v. Insurance Co.*, 43 N. H. *supra*.

It is a recognized rule of the doctrine of trusts, that while a creditor, as one of the *cestuis que trust*, may be a trustee, yet he has no power to prefer his own claim, "but must take equally with the others." 2 Perry on Trusts, sect. 596; *Downy v. Cross*, 7 Wall. 299.

Whilst entertaining the highest respect for the learning and judicial mind of Judge Dillon, I am constrained to dissent from his declaration, in *Buell v. Buckingham*

& Co., *supra*, that in the race of diligence among creditors such a director of a bankrupt concern may avail himself of his superior knowledge derived from *within* to secure himself over other creditors, with the co-operation of his associates. In this announcement he loses sight, it seems to me, of the fundamental principle underlying the office of a trustee of a trust fund. The gluttonous idea, "first come, first served," whatever be its merits elsewhere, certainly has no place in the forum of conscience in determining the legal ethics and duties by which a trustee is to be governed in the management and distribution of trust funds. He must act with absolute impartiality. All the beneficiaries of the trust fund must be served alike and at the same time.

As said by the English equity court, in *Gas Light Co. v. Terrell, supra*, in speaking of the right of such directors to avail themselves of their official information ; while a preference to a stranger might be only an undue preference, that of a director who was also a creditor, introduced the added element of a taint of fraud and a breach of trust. "Equitable assets shall be distributed equally and *pari passu* among all the creditors, without any reference to the priority and dignity of the debts." 1 Story Eq., sect. 544.

There may be *dicta* and adjudications of our supreme court recognizing, in general terms, the right of a failing corporation to prefer creditors, and one of its own officers under certain circumstances. *City of St. Louis v. Alexander*, 23 Mo., separate opinion of Ryland, J. ; *Kitchen v. Railroad Co.*, 60 Mo. 222–244, *et seq.* But that court has not held, under circumstances like these disclosed by the petition in this case, that such preference would be upheld. In the later case of *Eppright v. Nickerson* (78 Mo. 490), the court say : "the capital stock of a corporation is a trust fund held by the corporation for the benefit of all its creditors."

Conceding this, after the directors have officially an-

nounced the insolvency of the corporation, and a cessation of business, except for the purpose of collecting its assets, the court, when the proper case arises, must yield to the irresistible logic of the true office of such trustee, and hold that he cannot thereafter secure to himself an advantage over other beneficiaries of the trust estate.

This doctrine results almost necessarily from the rapid growth, pervasiveness, and anomalous character of these artificial agencies. The rules of law and equity must be adjusted so as to meet the exigencies of their being. The enlargement of equitable rules and principles. must be allowed in their application to new necessities and conditions·constantly springing out of the activities and developments of the arts and commerce of advancing civilization.

As said by Mr. Justice Miller, in *Sawyer v. Hoag* (17 Wall. 620): "When we consider the rapid development of corporations, as instrumentalities of the commercial and business world, in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern ; for the occasion for it is modern ; for the occasion for it could not sooner have arisen."

My conclusion is, that the payment of the money, and transfer of the notes and accounts by the directors to the defendant Jones was an invalid preference, and should be set aside.

II. The point is raised, on this hearing, by the defendant, that the demurrer was, at all events, properly sustained, because all the creditors of the corporation are not made parties to this action. No such objection was raised by the demurrers. Where a defect of parties is apparent on the face of the petition objection therefor must be raised by demurrer. If the defect does not so appear it should be raised by answer. But unless so raised the objection, on appeal or writ of error, will

be deemed to have been waived. *Walker v. Deaver et al.*, 79 Mo. 672; *State ex rel. v. True*, 20 Mo. App. 176.

But as this question will have to be met, perhaps, on a re-trial of the case, we should now determine it. We can see no reason why a single judgment creditor should not be permitted to file a creditor's bill without having to ascertain who all the other creditors are, and secure their co-operation, or make them parties, *nolens volens*.

The law protects and encourages the vigilant. The other creditors might, if they desire, intervene, and the proceeds of the fund, when restored by the decree of the court, would be distributed equally, *pro rata*, among all the creditors. But unless they come in, voluntarily, the plaintiff, by whose vigilance and diligence the misapplied fund is restored, is entitled to the fruit of his victory. Morawetz on Priv. Corp., sect. 584, and citation in note 1. If, however, the defendant, be a *bona fide* creditor, he being a party to the action, the court should decree that the fund in his hand be ratably distributed between him and the plaintiff. *Lippincott v. Shaw Car Co., supra; Rieper v. Rieper*, 79 Mo. 360-361.

Hall, J., concurring, the judgment of the circuit court is reversed, and the cause remanded. Ellison, J., absent.