The Kankakee Woolen Mill Company, Appellant,
v. Bertha Kampe *et al.*, Respondents.

St. Louis Court of Appeals, December 3, 1889.

1. **Corporations, Insolvent**: RIGHT TO PREFER CREDITORS. When a corporation has become hopelessly insolvent, and there is no reasonable or well-founded hope for a continuation of its business, and these facts are known to its officers and directors, all of its assets become a trust fund in the hands of the directors for the benefit of all its creditors, and an attempted preference, either in favor of the directors themselves or of a stranger, will be set aside by a court of equity.

2. ———: DEALINGS WITH DIRECTORS. A resolution of the board of directors of an insolvent corporation, authorizing the preference of two of the directors by chattel mortgages issued to them, severally, is invalid if the vote of one of these two directors was necessary to its adoption.

3. **Creditor's Bill to Subject Trust Funds**: RIGHT OF GENERAL CREDITOR TO SUE. A creditor at large may proceed in equity to set aside a preference, invalid on account of the hopeless insolvency of the corporation, and to compel the proper distribution of the corporate assets, and will be entitled to an injunction, upon giving bond, if there be danger of a waste or improper disposition of the assets.

*Appeal from the St. Louis City Circuit Court.*—Hon.
Daniel Dillon, Judge.

Reversed and remanded.

*Hiram J. Grover*, for the appellant.

The case made by the petition is clearly within the ruling of the supreme court of Missouri, in the cases of *Ward v. Davidson*, 89 Mo. 454; *Roan v. Winn*, 93 Mo. 503. There is no conflict between the ruling laid down in *Foster v. Mullanphy Planing Mill Co.* (92 Mo. 79), and the ruling in *Roan v. Winn*. But, if there is any conflict in principle, the latter case must be held to overrule the former. Where the debt is ascertained, liquidated and admitted, and the debtor is insolvent, and has no property within the jurisdiction whereon execution or attachment may be levied, it is not necessary to obtain a judgment, or issue execution. *Turner v. Adams*, 46 Mo. 95; *Sav. Ass'n v. Kellogg*, 52 Mo. 590; *Heralson v. Mason*, 53 Mo. 213.

*Nathan Frank*, for the respondent.

(1) Plaintiff not being a judgment creditor and not having a lien upon the property by attachment cannot proceed in the way he seeks to proceed. *Martin v. Michael*, 23 Mo. 50; *Merry v. Freeman*, 44 Mo. 518; *Alnutt v. Leper*, 48 Mo. 319; *Crim v. Walker*, 79 Mo. 335. The corporation had the right to prefer its co-defendants. *Foster v. Mill Co.*, 92 Mo. 79.

BRIGGS, J., delivered the opinion of the court.

The circuit court sustained a general demurrer to the plaintiff's bill, and, upon its refusal to plead further, the court dismissed the cause and entered a final judgment on the demurrer for the defendants. From this judgment, the plaintiff has prosecuted this appeal.

On the twenty-ninth day of January, 1889, the plaintiff instituted this action against Bertha Kampe, Albert Kampe, J. Toensfeldt, Horace Bateson, and the Standard Hosiery Mill Company. The plaintiff's cause

of action as stated in its petition is substantially as follows: On the twelfth day of January, 1889, the Standard Hosiery Mill Company was a business corporation organized under the laws of the state of Missouri, and engaged in business in the city of St. Louis. The defendants, Albert Kampe and Bertha Kampe, his wife, and J. Toensfeldt, were the owners of all the capital stock of the corporation and composed its board of directors. At a meeting of the directors, held on said day, a resolution was adopted, by which Albert Kampe, the president of the corporation, was authorized and directed to execute two chattel mortgages on the personal property of the corporation, one to be in favor of Bertha Kampe to secure the payment of five hundred dollars, which was alleged to be due her from the company, and the other to secure J. Toensfeldt against an alleged liability as endorser of certain notes of the corporation then outstanding. Bertha Kampe and J. Toensfeldt were present at this meeting of the directors, and voted for the resolution. The plaintiff alleged that at the time this resolution was adopted the Standard Hosiery Milling Company was hopelessly insolvent; that this fact was well known to the directors, and that two days thereafter the hosiery company made a general assignment for the benefit of creditors, but not until the chattel mortgages had been executed and delivered, as provided for by the resolution. The plaintiff then averred that it was the owner of three promissory notes executed by the Standard Hosiery Company, two of which were past due on the twelfth day of January, 1889, and that payment had been demanded prior to that day, and that the company had failed to pay, and that Bertha Kampe and Toensfeldt had notice of this at the time they voted for the resolution; that, previous to the institution of the suit, the notes were presented to the assignee of the hosiery milling company for allowance, but the assignee declined to allow them, because he had not published

the notice required by the statute for the allowance of demands; that by the terms of the mortgages they became enforceable on the day of the institution of plaintiff's suit; that the beneficiaries were then claiming and asserting the attempted fraudulent preference under the mortgages, and that the defendant, Bateson, the trustee in the mortgages, was threatening to take possession of and sell the property under the mortgages, whereby it would become lost to the plaintiff. The plaintiff asked for an order restraining the defendants from selling or in any way disposing of the mortgaged property, and that the same be sold by order of court, and the proceeds be applied to the discharge of the debts held by the plaintiff against the Standard Hosiery Milling Company.

The proper solution of the question presented by this record involves the determination by us of two questions: *First.* Can the directors of an insolvent corporation, after it has been ascertained by them that the corporation is so hopelessly embarrassed as to prevent a further continuation of business, prefer one of their number as a creditor of the concern, to the exclusion of other creditors; and, if so, can this be done by the vote of the director for whose benefit the corporate action is taken? *Second.* Can an ordinary creditor of an insolvent corporation maintain a suit in equity to restrain the unlawful and wrongful diversion of the corporate assets without having first reduced his demand to judgment?

I.   It is the conceded law in this state, as in many other jurisdictions, that a private corporation, like an individual, may pay one creditor in preference to another, and that its stockholders and directors may loan it money and that their debts will be recognized and enforced by the court; and it has also been held that the stockholders or directors of an embarrassed corporation may come to its rescue, and that for money loaned under such circumstances, the assets of the

corporation may be pledged as security. But these principles are only applicable to what may be termed or designated as "going concerns." They cannot be applied to insolvent corporations. By this we do not wish to be understood as deciding that a corporation that is financially *embarrassed* will be deprived of the right to deal with its corporate property in a legitimate and proper way, but we do say, that when a corporation is hopelessly insolvent, and there is no reasonable or well-founded hope for a continuation of its business, and these facts are known to its officers and directors, then all of the assets of the corporation become a trust fund in the hands of the directors, to be administered by them as trustees or agents for the equal benefit of all the creditors of the concern ; and any attempted prefer-ence, either in favor of the directors themselves or of a stranger, will not be upheld. *Williams v. Jones,* 23 Mo. App. 132 ; *Roan v. Winn,* 93 Mo. 503 ; *Foster v. Mullanphy Planing Mill Co.,* 92 Mo. 79. The plain-tiff's petition does not aver, that the insolvency of the corporation, at the time the mortgages were authorized, had been officially declared by the directors, but it does aver, that, at the time, the directors well knew that the corporation was utterly insolvent, and that, two days after the mortgages were authorized and executed, the directors made an assignment under the insolvent law of the state. If these facts are made to appear they would, in the absence of any countervailing circum-stances, authorize a court of equity to treat the chattel mortgages as voidable at the suit of a creditor. In the case of *Williams v. Jones, supra,* Judge PHILLIPS, in delivering the opinion of the court, said : "It is now a conspicuous fact in the history of the progress of equity jurisprudence throughout England and America, that the courts are generally yielding to the principle that the directors and officers of an insolvent corporation are trustees of the assets for the benefit of all the creditors,

and must manage and distribute such assets, after the ascertained and confessed insolvency, as any other trustees and agents of a trust fund ; and therefore they cannot secure to themselves any advantage, by way of preference, over other creditors of equal right." This is a wise and salutary rule, and in many cases its rigid enforcement will afford the only protection to outside creditors of such concerns.

The averments in the plaintiff's petition present another objection to the mortgages, which we think is sufficient to invalidate them. The resolution by which the mortgages were authorized was passed by the votes of Bertha Kampe and J. Toensfeldt. The resolution authorized the execution of two mortgages, and it could only be adopted by the vote of one or the other of the two interested parties. *Ward v. Davidson*, 89 Mo. 454.

II. The general rule is, that, before a creditor can maintain a bill in equity to set aside a fraudulent sale of his debtor's property, he must first go into a court of law and reduce his demand to a judgment. The reason of the rule is, that in such cases a court of equity can only interfere with the general and inherent right of the debtor to dispose of his property at the instigation of *bona fide* creditors ; and that it cannot be asserted with certainty that any one is an actual and subsisting creditor, until a judgment has been obtained on his claim. The defendants invoke this rule in support of the action of the trial court. If this is to be regarded as an ordinary proceeding in equity to set aside a fraudulent sale or disposition of the property of the defendant corporation, then the action of the court must be sustained, for the reason that the hosiery milling company is a resident corporation, and no reason is shown why the plaintiff could not obtain a judgment on its notes. The mere fact that the suit would be useless would not change the rule. If the corporation was entirely without assets, as the plaintiff alleges, it would

only dispense with the necessity of issuing an execution. We think, however, the petition in this case presents quite a different state of facts, than is ordinarily found in actions to set aside fraudulent conveyances. The object of the plaintiff in this action is to prevent the unlawful and unauthorized diversion of trust property ; and it is made to appear, on the face of the proceedings, that the attempted sale of the property was not only fraudulent in fact, but was absolutely prohibited by law, and that the action of the directors was destructive of the equitable lien possessed by the plaintiff, in common with all other creditors, on the corporate property.

The primary object of the bill is the enforcement of a trust, and the protection of trust property, and such matters have always been held to be the subjects of exclusive equity jurisdiction. Although the plaintiff, in its petition, seeks to have the mortgaged property applied to the payment of its debt, to the exclusion of all other creditors, yet the averments in the petition make the property a trust fund, and it would necessarily result from this, that plaintiff's action must be regarded for the benefit of all creditors who may come in before judgment and establish their claims. In this respect, this case is distinguishable from an ordinary action to set aside a fraudulent conveyance of property, where the primary, and only, object is the satisfaction of the plaintiff's demand, to the exclusion of other creditors; in such a case, the court is not dealing with trust property, and it will not inquire into the *status* of the property sought to be reached, or, in any way, interfere with its possession, or absolute enjoyment, except at the suit of a judgment creditor. But we can see no reason for the enforcement of this rule in cases like the one under consideration, where the principal purpose presents, within itself, the subject of equitable cognizance. This doctrine is recognized by the supreme court

of the United States, in the case of *Russell v. Clark's Executors*, 7 Cranch, 89. The court, speaking through Judge MARSHALL, said: "It is also true, that if a claim is to be satisfied out of a fund, which is accessible only by the aid of a court of chancery, application may be made, in the first instance, to that court, which will not require that the claim should be first established in a court of law." The same doctrine has been asserted in *O'Brien v. Coulter*, 2 Blackf. 421, and *Miller v. Davidson*, 3 Gilm. 523. The law of these cases has received the express sanction of this court, in the separate opinion of Judge LEWIS, in the case of *Kent v. Curtis*, 4 Mo. App. 121, and also in the case of *Luthy v. Woods*, 6 Mo. App. 67. In the case last cited, Judge HAYDEN, in delivering the opinion of the court, said: "The question as to the right of the plaintiff in this case to sue in equity, without having first obtained a judgment at law, was passed upon in *Luthy v. Woods*, *supra* (1 Mo. App. 167). The plaintiff has proceeded upon the faith of that decision, and it should not be disturbed, in any event, as against him. But, as it seems to me, on a question involving the dividing line between law and equity, and the right to a trial by jury, important to keep the adjudicated cases harmonious, and to adhere to principles, upon which they can all be reconciled, I desire to say that I do not assent to the decision in *Luthy v. Woods*, even as subsequently interpreted. In my view, as there was no original ground of equity jurisdiction, the plaintiff should have obtained a judgment at law. As the plaintiff was a mere general creditor, showing no trust, then there was no trust fund, to bring the case within what is said in *Russell v. Clark*, 7 Cranch, 89; *O'Brien v. Coulter*, 2 Blackf. 421; *Miller v. Davidson*, 3 Gilm. 523, and, therefore, no jurisdiction on the distinct ground of trust. If the remarks made in those cases do not proceed upon the ground of a fund held in trust, it would seem that they

are *dicta*, and not supported by the adjudged cases."
See also *Batchelder v. Altheimer*, 10 Mo. App. 181.

Mr. Morawetz, in his admirable treatise on the law
governing private corporations, section 797, says:
"Creditors of a corporation are entitled to the usual
equitable remedies for the protection of their rights.
They are therefore entitled to an injunction to restrain
any threatened waste or diversion of the corporate assets,
which would result in the destruction of their security,
and thereby cause them irreparable loss. If the man-
aging agents, who are in charge of the company's
assets, are the persons threatening the wrong, a receiver
may be appointed to take the company's property out
of their hands." The author intended this doctrine to
apply only to insolvent corporations, as shown by section
799, which is as follows: "A creditor cannot interfere
with the agents of a corporation; and he is not inter-
ested in the disposition made of the surplus funds of
the company, or in the management of its affairs, so
long as the company is not insolvent, or in danger of
being rendered insolvent, by waste of its assets. * * *
A creditor, who has not established his claim by a judg-
ment against the company, cannot enjoin any dealing
with the company's assets, or obtain the appointment
of a receiver, unless it be clear, not only that the
threatened dealing would impair his equitable rights,
but also that he would suffer irreparable injury if left to
pursue his ordinary remedy." In the case of *Conro et
al. v. Gray et al.*, 4 How. Pr. 166, the defendant, Gray,
was the president of the Port Henry Iron Company.
He assigned the property of the corporation to his
co-defendants, in payment of his individual debts.
The plaintiffs, as creditors of the corporation, brought the
action to vacate the assignment, without first reducing
their demand to judgment. The court, in passing on
the case, said: "Horace Gray, as president of the Port
Henry Iron Company, was a trustee of the creditors of

the company. His assignments of the property of the company, in trust, to pay his individual debts, was a breach of trust, and a fraud on the creditors of the company. The property, if it belonged to the company, was a trust fund, for the payment of its creditors. And such creditors, having claims on such funds for the payment of these debts, had a right, before *proceeding to judgment and execution*, to file a bill against the corporation and the assignees of Gray, to prevent a misapplication of the trust fund, and to secure its appropriation to its legitimate uses, viz., the payment of the debts of the company." Citing Story Eq., secs. 827, 835, 851; *Innes v. Lansing*, 7 Paige, 583. And the court further held, that the solvency of Gray's assignees could not change the rule, nor afford any reason why the creditors should not maintain their action.

It is quite clear, from these authorities, that an ordinary contract creditor of an insolvent corporation can maintain a suit in equity to compel the proper distribution of the corporate assets; and if it should be made to appear that there was danger of the property being wasted, or improperly disposed of, then the plaintiff would be entitled to a restraining order, by giving the necessary bond; and, if necessary, to have a receiver appointed, to take possession and dispose of the property under the orders of the court.

Our conclusion is that the plaintiff's petition stated a cause of action against the defendants, and their demurrer was, therefore, improperly sustained. The judgment of the circuit court will be reversed, and the cause remanded. All the judges concur