STATE OF MISSOURI *ex rel.* ADOLPH MOLL, Respondent, v. F. W. BROCKMAN *et al.*, Appellants.

St. Louis Court of Appeals, January 21, 1890.

1. **Corporations:** RIGHT TO PREFER CREDITORS. When the insolvency of a corporation is known to its officers, and its insolvency renders the continuation of its business impracticable, a preference given by it to one or more of its creditors is voidable; and so is a sale by it of its property, if it is made for the purpose of effecting such preference, and the vendee knows of the condition and purpose of the corporation.

2. ————: REMEDY TO AVOID PREFERENCE ILLEGAL ON ACCOUNT OF INSOLVENCY. The right of creditors to avoid such preference or sale is purely equitable; it cannot be enforced in an action at law, nor will it serve as a defense to an action at law, brought against a creditor who has levied upon property which was sold by the corporation for the purpose of such preference.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*J. M. Holmes*, for the appellants.

(1) The evidence did not show a delivery of the goods to Moll before the deed of assignment; hence the title passed to the assignee. (2) The court erred in refusing to instruct the jury that the conveyance to Moll was invalid, if made with the intent to prevent the property transferred from going into the hands of the assignee. (3) The court erred in refusing to instruct the jury that the preference of the Franklin Bank was illegal, and that the transfer to Moll, made to effect such preference, was also illegal. *Holt v. Bancroft*, 30 Ala. 193; *Berry v. Cutts*, 42 Me. 445; *Perry v. Holden*, 22 Pick. 269; *Van Horn v. Smith*, 59 Ia. 142; *U. S. v. Bank*, 8 Rob. (La.) 302; *Sumner's Appeal*, 16 Pa. 59; *Herman v. Wolfeshberger*, 19 Pa. 59; *Broading v. Boggs*, 20 Pa. 33; *Claflin v. McLaughlin*, 65 Pa. 492; *Wallace v. Wainwright*, 87 Pa. 263; *Letcher v. Stagner*, 2 Duv. 423; *Wilson v. Snelling*, 3 Bush. 322; *King v. Moody*, 79 Ky. 63; *Martin v. Haussman*, 14 Fed. Rep. 160; *Dahlman v. Jacobs*, 16 Fed. Rep. 614; *Clapp v. Dittman*, 21 Fed. Rep. 15; *Perry v. Corby*, 21 Fed. Rep. 737; *Freund v. Yagerman*, 26 Fed. Rep. 812; *Clapp v. Nordmeyer*, 25 Fed. Rep. 71; *Krebs v. Ewing*, 22 Feb. Rep. 693; *Feldkamp v. Morse*, 27 Fed. Rep. 261; *Hard v. Foster*, 98 Mo. 297. The appellants were in a position to avail themselves of this defense. They may be liable in an action by the assignee or by the creditors, but not in an action by the fraudulent grantee. The title is not in the plaintiff, and he has no right in the premises. *Feldkamp v. Morse*, 27 Fed. Rep. 261.

*Paul F. Coste* and *Chas. Nagel*, for the respondent.

The sole point in this case is: Have the jury determined the question of whether or not the preference was fraudulent, under proper instructions? If

they have, that disposes finally of the case. The conveyance to Moll, if not void by reason of being made in aid of a fraudulent preference, unquestionably must be upheld as a valid sale. The farther question whether this preference, in all respects honest and legitimate, shall be allowed to stand to the exclusion of other creditors, or whether the spirit and intention of the assignment act require that the property received by the preferred creditor shall be administered as a trust for the benefit of all the creditors in conjunction with the subsequent assignment of the company, is a matter that is entirely foreign to the issues of this case and not even within the jurisdiction of this court. It cannot avail here as a defense, and can only be considered in a proper proceeding for that purpose in a court of equity.

BIGGS, J., delivered the opinion of the court.

On the thirty-first day of January, 1888, the defendants instituted an attachment suit against the Kendall-Bayle Cracker Company, and they instructed the sheriff to levy the writ of attachment on certain goods, which they claimed belonged to the "cracker company." The relator filed with the sheriff a written claim, properly verified, in which he asserted ownership in the goods. The defendants gave the required bond, and the goods were sold under the attachment proceedings. The bond so given forms the basis of the present action, in which the relator seeks to recover of the defendants and their sureties the value of said goods.

The material facts, out of which this litigation has arisen, are as follows: The Kendall-Bayle Cracker Company, hereinafter designated as the "cracker company," was at the times hereinafter mentioned a business corporation, organized under the laws of the state of Missouri, and prior to January 28, 1888, it had been engaged in the manufacture of crackers in the city of St. Louis. At the date last named, the indebtedness

of the "cracker company" greatly exceeded its available assets, and its business matters were in such a deplorable condition, that its officers deemed a further continuation of its business impracticable, and concluded that an assignment would have to be made. The "cracker company" was indebted to the Franklin Bank in quite a large sum, to-wit, fifteen or twenty thousand dollars, and this indebtedness was evidenced by notes, endorsed by the officers of the company. On the twenty-seventh day of January, 1888, at a conference between the officers of the two corporations, it was ascertained that the "cracker company" was hopelessly insolvent, and that a further continuation of its business was impracticable. The practical result of this conference was an agreement between the officers of the corporation and the bank officials, that all demands against the solvent customers of the company should be transferred to the bank in liquidation of its indebtedness, and that, if a purchaser of the stock of goods belonging to the company could be found, the proceeds of such sale should also be turned over to the bank in part payment of the company's indebtedness to it. It was also understood that the "cracker company," after the consummation of this agreement, would make a general assignment of the remainder of its assets, for the benefit of all its creditors. In pursuance of this agreement the "cracker company" transferred to the bank notes and accounts of the value of seven or eight thousand dollars; and on the same day the relator, at the solicitation of the cashier of the bank, purchased a large part of the stock, for which he claims to have paid about six thousand dollars. The proceeds of this sale were turned over to the bank. The relator was a member of the board of directors of the bank, and he knew that the company was largely indebted to his bank and to other parties; he also knew that the bank was to receive the benefit of the purchase made by him;

but whether he was fully advised of the company's financial condition, and that its officers intended to make an assignment of the remaining assets, are matters of some controversy.   A few hours after the completion of the sale to the relator, the " cracker company " made a general assignment of its remaining assets.   The property conveyed to the assignee consisted of machinery, and remnants of stock, of the value of fifteen or eighteen hundred dollars.

At the time of the sale to the relator, the " cracker company was indebted to the defendants in the sum of eleven thousand dollars, and when they were advised of the sale and the payment of the purchase money to the bank, they brought their attachment suit, as hereinbefore stated.

The defendants by their answer interposed the defense, that the sale to Moll was made for the purpose of defrauding the other creditors of the " cracker company;" that the preference of the Franklin Bank was fraudulent and void, as a matter of law, for the reason that the preference was made after it was known that the "cracker company" was insolvent, and would be compelled to make an immediate assignment, and that the relator made the purchase with full knowledge of all these facts, and for the purpose of assisting the "cracker company" and the bank in the accomplishment of this fraudulent preference.

The trial court was of the opinion, and so instructed the jury, that the "cracker company" had the right under the law to prefer the Franklin Bank for any lawful debt, and for such purpose it had a right to sell any part, or the whole, of its property to the relator for a fair and reasonable price, and to transfer the proceeds of such sale to the bank in payment of its debt; that the sale to Moll could only be invalidated in the event the jury should find from the evidence that the sale was made by the company with the intention to hinder,

delay or defraud other creditors, and that Moll at the time knew of such fraudulent intention, etc. The jury returned a verdict for the plaintiff for the value of the goods, and judgment was entered thereon. The court refused the defendants a new trial, and they have brought the case to this court by appeal.

The first question to be answered on this record is, can the directors of an insolvent corporation, after its insolvency has been ascertained, and there is no reasonable hope for a further continuation of the business, lawfully prefer one or more creditors to the exclusion of others. The determination of this question may not be necessary to the complete disposition of this case, but it is a question that is fairly presented by the record, and we have deemed it proper to indicate our opinion on the subject, in view of the fact that it is a matter of great commercial importance.

The law as declared by the court is undoubtedly applicable to sales made by insolvent individuals or bankrupt firms. The right of an individual, although insolvent, to prefer one creditor to another exists at common law, and is a part of the *jus disponendi* that follows from the ownership of property. So long as the individual debtor is permitted to retain the dominion or control of his property, the right to dispose of it for honest and legitimate purposes remains. Hence it has been held that the transfer of all property owned by an insolvent in payment of one creditor is valid, provided the sale has been made at a fair price, and with the intention of paying an honest debt. For this reason the courts of this state have declined to hold that such a transfer must be construed to be a general assignment under the insolvent laws of the state.

The same rule applies to an insolvent firm. The creditors of a bankrupt copartnership have no lien on the firm assets. The partners may, so long as the firm exists, make such disposition of the property as they

may see proper. They have a right to apply the partnership property to the discharge of the debt of any creditor to the exclusion of others, or any member of a firm, with the consent of the others may apply the firm assets to the payment of his individual debts. The only qualification is that the transaction must be honest, and not fraudulent. *Sexton v. Anderson,* 95 Mo. 373.

But this right under the law to prefer creditors cannot be applied to insolvent corporations *without other qualifications or restrictions.* The officers of an insolvent corporation occupy quite a different position to its property and creditors, than that occupied by the members of an insolvent copartnership. It is the well-settled law of this state and of all other jurisdictions, as far as our investigation has gone, that, after the insolvency of a corporation is known to its officers and it is evident that a continuation of the business is impossible or impracticable, the corporate assets become a trust fund in the hands of its directors, to be managed and disposed of by them for the equal benefit of all creditors of the corporation. *Roan v. Winn,* 93 Mo. 503; *Williams v. Jones,* 23 Mo. App. 132; *Marr v. Bank,* 4 Cold. 471; *Eppright v. Nickerson,* 78 Mo. 490; *Chew v. Ellingwood,* 86 Mo. 260; *High Tower v. Mustain,* 8 Ga. 506. This doctrine is purely equitable, and it has grown out of the hardship or unreasonableness of the common law, by which all debts of a defunct or dissolved corporation became extinguished. This induced courts of equity to interpose for the protection of creditors, and out of this assumption of jurisdiction has grown the equitable doctrine, that the property of an insolvent corporation must be regarded as a trust fund, and the directors must manage it as trustees, and distribute it according to the rules and usages of courts of equity. In the case of *Roan v. Winn, supra,* the court only decided that the directors of an insolvent corporation could not secure any advantage to *themselves* in

the administration of the corporate assets. That was the only question in judgment. And to the same effect is the case of *Adams v. Kehlor Milling Co.*, 35 Fed. Rep. 433. But when the reasoning of the courts in the cases cited is extended and applied to the complete administration of the assets of an insolvent corporation, the logical result must necessarily be the adoption and enforcement of the equity rules for the administration of equitable assets, *i. e.*, an equal distribution among all creditors without any reference to the priority or dignity of the debts. There cannot possibly be any hardship in this rule, and when it is applied to an insolvent corporation it will be found to rest on the plainest principles of common justice. The stockholders and officers incur no personal liability for the debts of the corporation; the capital and other acquired property constitute the only fund to which the creditors can look for indemnity; and if a single creditor can, by any legal technicality, as by preference, or attachment, appropriate all of such fund to his benefit, it would certainly be at the expense of all rules of natural justice. The supreme court of Tennessee in the case of *Marr v. Bank of West Tennessee*, 4 Cold. 471, in discussing this identical question said : "After the insolvency of the corporation, although the legal ownership of the assets may continue as before, the beneficial interest of the stockholder clearly no longer exists. A state of insolvency presupposes that the capital and assets are insufficient to meet its liabilities. The stockholders, having incurred no personal liability for the debts of the corporation, have, in point of fact, no interest in the disposition of the assets of the bank after its insolvency. In equity, as well as at law, the beneficial interest therein belongs to the creditors. The capital is the fund they trusted, and to which, with the after acquired property or assets of the corporation, they can alone look for indemnity. Both stand pledged for the

payment of the corporation debts, and a court of equity will follow them into the hands of stockholders or other person receiving them with notice, for the benefit of creditors. * * * A single creditor would, by no pretended legal technicality, be allowed to destroy the fund or appropriate it all to his benefit, and thereby totally defeat all the others."

The supreme court of Ohio in the late case of *Rouse v. Bank*, 22 Cin. Law Bulletin,. 219, said : " That when a corporation for profit, organized under the laws of this state, becomes insolvent and ceases to carry on its business, or further pursue the purposes of its creation, the corporate property constitutes a trust fund for the equal benefit of the corporate creditors, in proportion to the amounts of their respective claims and that it cannot then, by pledge or mortgage of the property to some of its creditors as security for antecedent debts, without other consideration, create valid preferences in their behalf over the other creditors, or over an assignment thereafter made for the benefit of creditors."

Our conclusion is that the *absolute* right of the officers of an insolvent corporation to pledge its property, or pay the money of the concern, in satisfaction of the debt of one creditor in preference to others, must be denied. This right is conditional and depends upon circumstances. So long as a corporation continues its business with a reasonable expectation of tiding over its financial difficulties, the courts will recognize and uphold the right of its directors to manage its business, and dispose of its property in the usual course of trade. It has been with reference to such concerns that the courts of this state have held that private corporations may prefer creditors, and that the directors and stockholders of an embarrassed corporation might ·loan it money, and take the corporate property as security. But, on the other hand, when the absolute insolvency of a corporation is ascertained, and a further continuation of its business could only be for the purposes of

liquidation, then the right to deal with the corporate property, except for the equal benefit of all creditors, ought to be taken away.

This equitable doctrine has become the statutory law of many states, and, to a certain extent, it has been made the law of this state by legislative enactment. R. S. 1879, sec. 744. Our statute, however, can only be applied to the directors of dissolved corporations, i. e., corporations dissolved by operation of law, or in case where the directors have, by direct corporate action, determined to go into liquidation. The section is not broad enough in its terms to reach back of such corporate action, and fasten on the directors the character of trustees of an express trust, in respect of the disposition of the corporate property in view of immediate bankruptcy. To accomplish this the equity rule must be invoked.

We are clearly of the opinion that the instructions of the court, touching the legal right of the "cracker company" to prefer and pay the debt of the bank were erroneous; but it does not follow that the error was prejudicial to the defendant's case, or that they, as attaching creditors, are in a position to urge it as a sufficient cause for reversal. The fact that the "cracker company" owed the bank is not controverted, and while we are decidedly of the opinion that the officers of the corporation committed a breach of trust when they transferred to the bank the bulk of the company's property, yet the transaction cannot, in this action, be regarded as a void preference, in the absence of an intention to defraud other creditors. In the absence of such intention, the payment of the bank debt could only be considered as an undue preference, and perfectly valid until assailed by other creditors by appropriate proceedings. *Gaslight Improvement Co. v. Terrell*, L. R. 10 Eq. Cases, 108. This preference in the absence of actual fraud could not be declared void at

the suit of the defendants as attaching creditors. With equal propriety it might be said that the defendant's attachment was void. In that proceeding the defendants sought to accomplish by legal process the same result, reached by the bank through the voluntary act of the corporation. Under such circumstances it would not be proper for us to declare, at the suit of the defendants, that the action of the officers of the company in preferring the debt of the bank was void, when the defendants themselves are seeking the same advantage of other creditors through the courts. *Foster v. Mullanphy Planing Mill Co.*, 92 Mo. 79; *Schroeder v. Mason*, 25 Mo. App. 190.

The stock of goods was taken from the possession of the relator, and the fact that he held possession of the property at the time it was seized under the defendant's writ of attachment, makes a *prima facie* case of ownership for him. In order to defeat a recovery upon the indemnity bond, it devolved on the defendants to show, and it was their only defense, that the relator did not pay value for the goods, or that the sale to him was actually fraudulent. There was no substantial controversy about the first proposition, and the second was fairly submitted to the jury and was found against the defendant. This defense did not depend upon the validity of the preference of the bank debt, but upon the good faith of the sale to the relator. *State ex rel. Heye v. Frank*, 22 Mo. App. 46. Although the company was insolvent, yet the right of the directors to sell the property remained, and if the relator purchased in good faith, and without knowledge of a fraudulent intention by the officers of the company to cheat other creditors, then the title of the relator to the goods so purchased must prevail over the claims of the defendants as attaching creditors.

The relator knew that the company intended to prefer the bank in the payment of its debt, and he knew

that the sale to him was made for the bank's benefit; if he also knew, or had reasonable cause to believe, that the "cracker company," at the time of the sale, was hopelessly insolvent and contemplated an immediate assignment or the cessation of business, then a court of equity, at the suit of the creditors of the concern, would compel him to account for the value of the goods. This right, however, is purely equitable and cannot be enforced in an action at law at the suit of an isolated creditor.

This same equitable right of action necessarily exists (under the facts disclosed by the record), in favor of the other creditors of the company against the bank, because the officers of the bank were fully advised of the condition of the company's business, and they knew that an assignment would follow the consummation of the plan to give the bank a preference in the disposition of the corporate property.

The defendants also insist that the transfer of the property of the company to the bank ought to be treated as a part of the general assignment for the benefit of all the creditors. The intimations of the supreme court in the case of *Hard v. Foster*, 98 Mo. 297, are strongly in favor of this theory; but this is an action at law, and the defendants must be regarded as attaching creditors, and there is no rule of law, with which we are acquainted, which would enable us to consider this aspect of the case, and make a practical application of the result to the rights of the parties to the present action. The mere fact that this is a suit on an indemnity bond cannot possibly make any difference. The defendants can occupy no other position in this litigation than that of attaching creditors.

For a like reason the defendants are precluded from making the defense, as they attempted to do, that the goods were not delivered to the relator until after the delivery of the deed of assignment to the assignee. The

proper determination of this question could only be had at the suit of the assignee. The goods were delivered to Moll within a reasonable time after the sale and prior to the levy of defendant's writ of attachment, and to this extent only can we extend such an inquiry in this case.

We are of the opinion that the judgment of the circuit court should be affirmed. All the judges concurring, it is so ordered.