THE STATE TO USE OF LANCASTER, *Guardian*, v. JONES *Administratrix*, *Appellant*.

1.   Guardian .of Insane Person: CONTINUANCE OF BUSINESS OF WARD.  It is the duty of a guardian of an insane person rather to protect and preserve. the business affairs of the ward than to wind' them up.  To that end the statute has invested the probate court with large discretionary powers, but in their exercise the court should not for any considerable length of time continue a hazardous manufacturing or mercantile business.  It is, however, within the power of the court to direct and order the continuance of the business of the ward and in many cases it would be its plain and obvious duty to do so.  ( Overruling, *Michael v. Locke*, 80 Mo. 548).

2.   ——— : ——— : ANNUAL SETTLEMENTS.  The annual settlements and orders of approval made thereon were competent, and sufficient evidence in this case to show that the business of the ward was carried on under the supervision of the court and so held, although no previous order therefor was procured.

3.   ———: ANNUAL SETTLEMENT: PRIMA FACIE EVIDENCE.  The annual settlements of a guardian of an insane person have not the effect of a final judgment and are only *prima facie* evidence of their correctness.

4.   Bond : PAST DEFAULTS.  The general rule is that sureties on a bond are not liable for past defaults unless made so by the terms of the

bond. And this rule applies when different bonds are given during the same appointment or term of office as well as where they are given under successive appointments.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Charles Gibson* and *C. E. Gibson* for appellants.

(1) A surety is not liable for a breach which has occurred prior to the execution of the bond. The authorities cited by respondent on this branch of the case do not support him. (2) The sureties on a bond cannot be held liable for a conversion, if the funds converted were never in the hands of the principal after they signed the bond. (3) It is error as against the surety to apply a credit, earned by the principal after the execution of the bond, in extinguishment of a debt originating prior to the execution of the bond and for which the surety is not liable. (4) A surety of one holding a position of trust is not liable on his bond for property received by the principal independent of the trust. *Leigh v. Taylor*, 7 B. & C. 491 ; *Dedham Bk. v. Chickering*, 4 Pick. 338 ; *Carey v. State*, 34 Ind. 105 ; *Reeves v. Steele*, 2 Head, 647 ; *State v. Long*, 8 Ired. 415 ; *Schloss v. White*, 16 Cal. 65 ; *Sample v. Davis*, 4 Greene [Ia.] 117 ; *Sommers v. Corn*, 3 Bush, [Ky.] 555 ; Schouler on Dom. Rel., sec. 367 ; *Cabanne v. Skinker*, 56 Mo. 357 ; *Blair v. Ins. Co.*, 10 Mo. 560 ; *Nolley v. Callaway Co.*, 11 Mo. 447 ; *City v. Sickles*, 52 Mo. 122 ; *Bank v. Traube*, 6 Mo. App. 221. (5) A principal speculating with trust property cannot render the surety liable beyond the amount of property received by the principal by virtue of his trust. The surety is not liable for the speculations of the principal beyond the amount of the trust property. (6) One taking the profits of a business conducted without authority of law, but in the utmost good faith by the trustee

and under the orders of the court having control. of the trustee, must take such profits subject to the reasonable compensation of the trustee for conducting such business. *Byrd v. Governor*, 2 Mo. 102 ; *Van Bibber v. Julian*, 81 Mo. 618 ; *Brown v. Litton*, 1 Peere Wms. 140 ; 10 Modern Reps. 20. (7) The statute confers on the probate court power to authorize a guardian to continue the business of his insane ward. R. S., secs. 5787, 5791, 5795, 5805. The statute requires the guardian to manage and administer the estate. The court did not decide the precise question here presented in *Michael v. Locke*, 80 Mo. 548, and that case is not controlling authority here. *Long v. Long*, 79 Mo, 659. (8) When a guardian offers to deliver up notes of the estate to his successor, the successor has no right to require an inventory. When a suit is instituted on the bond of a guardian (which suit is in the nature of a settlement), the sureties have a right to deliver up the property and take credit for the same. If a conversion takes place of insolvent notes, the damages are only nominal. (9) A recovery cannot be had on a ground not stated in the petition.

*G. A. Castleman* and *J. A. Harrison* for respondent.

(1) Jones had no authority, under the sanction or on the order of the probate court, to prosecute the business upon the ward's estate. *Western Cement Co. v. Jones*, 8 Mo. App. 373 ; *Michael v. Locke*, 80 Mo. 548. (2) The investment in trade of a ward's estate by a guardian, is a breach of duty by the guardian and he must account to ward's estate for all profits. Perry on Trusts, sec. 427. "When a guardian speculates with his ward's funds, or employs them in trade, he must account for the profits. As this is a clear breach of trust, compound interest would be properly chargeable. It would seem to be the true rule, in equity, where large

profits, which ought to have gone to the credit of *cestui que trust*, are appropriated by his trustee, to require them to be turned in on account." Schouler Domestic Relations, 477, 478; *Spear v. Spear*, 9 Rich. Eq. 184. " The ordinary commission is sometimes refused for disbursements of the guardian's final balance to the ward and receipt of the original fund ; nor is it allowed on the principal in mere re-investment." Schouler Dom. Rel., note 5, p. 201, and cases cited. " In the present state of the law on this point, no trustee could be advised, under any circumstances, to undertake the responsibility of carrying on any business in trust for others. For, by so doing, he adopts the same risks and liabilities as persons who trade on their own account, while he can participate in none of the profits." Hill on Trustees, 534. See, also, 3 Redf. Ex'rs and Adm'rs [2 Ed.] 402, pl. 10, and cases cited. "An executor or administrator is regarded as a trustee, and when he wrongfully uses the trust funds in his hands for his own purposes, or embarks them in enterprises distinct from the management of the estate, expecting to realize a personal profit, nothing can be more just than the rule above announced. The *cestui que trust* always has the right to follow the trust funds, and avail himself of any gain that has been made out of them." *Merritt v. Merritt*, 62 Mo. 156. (3) The failure and refusal of Jones, upon his removal, to account for and deliver over to his successor the notes and due bills belonging to his ward's estate, was a conversion thereof, and an appropriation to his own use. For "a wrongful taking or assumption of a right to control or dispose of property constitutes a conversion. Indeed any wrongful act, which negatives or is inconsistent with the plaintiff's right is *per se* a conversion." *Schroeppel v. Corning*, 5 Dim. 236 ; *Williams v. Wall*, 60 Mo. 321 ; *Koch v. Branch*, 44 Mo. 542 ; *State ex rel. Wolff v. Berning*, 74 Mo. 49. A mere refusal to deliver up, upon demand, to their owner, property gotten from a

third party by the holder, who was ignorant of the ownership and was holding in good faith, is held to be a conversion. *Rembaugh v. Phipps*, 75 Mo. 422. (4) The face of the notes converted was, *prima facie*, the measure of damages to which plaintiff was entitled. *Menkens v. Menkens*, 23 Mo. 252.; *Bredow v. Mer. Sav. Inst.*, 28 Mo. 182; *Wolff v. Berning*, 74 Mo. 87. The annual settlements of the guardian are mere *ex parte* statements of accounts and are not admissible as evidence in favor of defendant in this cause. *State v. Hoster*, 61 Mo. 546; *State v. Roeper*, 9 Mo. App. 21; s. c., 82 Mo. 57. But in the present cause the settlements are all really in evidence—since those settlements are merely copied from the books kept by Jones, and even if the law did make *ex parte* statements competent, yet defendants are not injured, as the contents of the settlements were before the referee. (5) Under section 5796, Revised Statutes, the probate court ordered a new bond; it was given, and the parties to that bond are liable for all breaches of duty by the guardian—whether before or after the date thereof—as the new security is cumulative. *State ex rel. v. Drury*, 36 Mo. 284; *State ex rel. v. Fields*, 53 Mo 474; *Haskell v. Farrar*, 56 Mo. 497; *Wolff v. Schaeffer*, 4 Mo. App. 372–375. But the findings of the referee show that all the money and property converted by Jones, excepting $182.06, taken January 4, 1874, was appropriated subsequent to date of the bond sued on, and this was, of course, still in his hands and was converted when he refused to pay it to his successor. (6) Under the doctrine of "express aider," the failure of plaintiff to allege neglect of Jones in his failure to collect the notes and due-bills was cured by defendant's plea that Jones had used due diligence in his efforts and failure to collect, and the finding of the referee as to those notes, etc., is sound upon that ground, although it is based upon Jones' "conversion" of these assets. Bliss on Code Plead., sec. 437; *United States v. Morris*, 10 Wheat. 246; *Lemon v.*

*Chanslor*, 68 Mo. 340. (7) The finding of the referee, when correct as to facts found, is to be supported, although the court may not agree with all of the reasons assigned. *O' Neil v. Capelle*, 62 Mo. 208; *The Moniteau National Bank v. Miller*, 73 Mo. 187. In pleading, "less particularity is required, when the facts lie more in the knowledge of the opposite party." Bliss on Code Pleading, Sec. 310; Stephens' Pleading, *368. Plaintiff could not know with particularity the disposition of assets, belonging to the ward, in keeping of the guardian—and defendants followed the well-established rule, in alleging impossibility of collection—but failed to offer any proof of diligence in, or impossibility of, collecting. (8) Jones was guilty of waste of his ward's estate in the large expenditures made for support of ward and family. The guardian "in supplying the wants of his ward is to consider, not the style of life to which they have been accustomed, so much as the income of their estate at his disposal." Schouler on Dom. Rel. 455.

BLACK, J.—In 1871, Joseph H. Locke was found to be of unsound mind, and incapable of managing his affairs, and, thereupon, the probate court of St. Louis county appointed Jones guardian of his person and estate. The guardian gave bond as required by law. By order of that court, Jones gave a new bond in April, 1874, with Howard and others as sureties. In 1878 the court ordered the guardian to procure and file another bond, and for failure to comply with that order the court revoked the former appointment, and appointed R. D. Lancaster guardian of the insane person. The deposed guardian failed to make settlement of his accounts, and Lancaster brought this suit on the second bond, assigning various breaches. Locke, it appears, at and prior to the inquisition, had been engaged in selling cement and lime, and in manufacturing lime; the business had a reputation of considerable value. Jones, as guardian, in addition to collecting debts due to and paying

those due from the ward, carried on the business just as it had been previously conducted by the ward. The profits thus accruing to the estate, from 1871 to 1876, amounted to $52,376.66. There were losses in 1877, of a little over one thousand dollars. The referee, by whom the cause was heard, debited the late guardian with $160,634.53. This amount includes the item of profits before noted. In the annual settlement made in the probate court the guardian had allowed to him, from time to time, compensation of five per cent. on disbursements, amounting in all to about eighteen thousand dollars. On the trial, plaintiff conceded to defendants credit for commissions at five per cent., on the amount with which the guardian was debited by the referee, amounting to about eight thousand dollars. The difference of ten thousand dollars constitutes one of the items now in dispute. The defendants, it will be seen, had credit by the refereee for commissions on the profits. But in making those profits the late guardian bought and sold merchandise, paid laborers, and the like, large sums of money ; these transactions amounted to over two hundred thousand dollars, and appear on the one side and the other of the accounts filed in the probate court, but do not appear in the statement of the account as made by the referee. He takes account of the profits made, but not of the volume of business transacted by which those profits were realized, and hence the difference in the result.

1. The referee and court denied any compensation on the volume of business done, on the theory that the guardian had no right, with or without an order of the probate court, to carry on the business of the ward, and that every dollar thus invested was a breach of trust. That the guardian conducted the business with ability and perfect honesty, is not disputed. In determining the powers and duties of a guardian of an insane person, it will not do to follow closely, by analogy, the law with

respect to the administration of estates of deceased persons. There the general purpose of the law is to wind up the estate, pay off the debts and turn over the remainder of the property to those entitled to the same in succession. To that end creditors must prove up these demands within a specified time or be forever barred. In the case of insane persons, the ward continues to be the owner of the property. He and his family are to be supported, his children educated, and it is not practicable to close up his business affairs. Hence the bond of the guardian is conditioned to "manage and administer his estate," etc. Section 5805, Revised Statutes, provides that the probate court "may make an order for the restraint, support and safe keeping of such person, for the management of his estate, and for the support and maintenance of his family and education of his children, out of the proceeds of such estate ; to set apart and reserve for payment of debts, and to let, sell or mortgage any part of such estate, real or personal, when necessary, for any of the purposes above specified." Other sections point out more in detail when real estate may be leased, mortgaged, or sold, and the proceeding to be taken therefor.

The power conferred upon the court to make an order for the "management of his estate" must be construed in the light of the other sections, and the nature of the subject matter with which the statute deals. The insanity is often of short duration, and the law contemplates cases where such persons may even make contracts, with the consent of the guardian. Section 5816. When restored to his right mind, it is made the duty of the guardian to yield up the property to his former ward. It is rather the duty of the guardian to protect and preserve the business affairs of the ward than to wind them up. To that end the statute has invested the probate court with large discretionary powers. In the exercise of these powers the court should not, for any considerable length of time, continue a hazardous manu-

facturing or mercantile business. But it is within the power of the court to direct and order the continuance of the business of the ward, and in many cases it would be the plain and obvious duty of the court to make such an order. *Michael v. Locke*, 80 Mo. 548, so far as it conflicts with what is here said, is overruled.

It has been held that the approval of an administrator's sale of real estate need not appear by a formal entry; it is sufficient if it appears from the whole record. *Grayson v. Weddle*, 63 Mo. 525; *Henry v. McKerlie*, 78 Mo. 430. The annual settlements and the orders of approval made thereon, in this case, were competent evidence to show, and they do show that the business was carried on under the eye and supervision of the court, and that is sufficient, though no previous order therefor was procured. It follows, from what has been said, that the guardian made no breach of his trust in the matter under consideration. So far as commissions are concerned it does not follow that he is entitled to five per cent. on all disbursements. The statute does not fix the amount of compensation. The rule, made applicable to administrators, would seem to be proper enough as to the collection and payment of debts existing at the date of the appointment, but for continuing a business and receiving and paying out moneys in that behalf, reasonable compensation, and that only, should be allowed. Indeed the five per cent. rule should only be adopted when, under the circumstances, it is reasonable for the services rendered.

2.    The further claim is that these annual settlements are conclusive. The law is well settled in this state that annual settlements of administrators, and of guardians and curators of minors, are not conclusive. They are subject to review and correction at the final settlement. *Picot v. O'Fallon*, 35 Mo. 29; *State to use v. Hoster*, 61 Mo. 544; *State to use v. Roeper*, 82 Mo. 58; *Folger v. Heidel*, 60 Mo. 284; *Seymour v. Seymour*,

67 Mo. 303; *West v. West,* 75 Mo. 208. As to administrators and guardians of minors, a clear distinction is made by the statute between annual and final settlements, and in final settlements, notice thereof must be given. In case of insane persons, the guardian "shall, once a year, or oftener, if required by the court appointing him, render to such court a just and true account of his guardianship, and make settlement with the court." R. S., sec. 5815. If the ward's mind be restored "the guardian shall immediately settle his account, and restore to such person all things remaining in his hands belonging to the ward." R. S., sec. 5824. And upon the ward's death "the guardian shall immediately settle his accounts and deliver the estate and effects of his ward to his personal representatives." R. S., sec. 5825. The statute, it will be seen, does not in terms provide for a final settlement, nor is any notice required to be given, still when the ward is restored to reason the property must be delivered to him, when he dies, to his representatives, and when the guardian is removed, to the successor. In all these cases there is some competent person with whom the guardian must account, and in this respect his settlements are more analogous to those of an administrator *pendente lite.* These annual settlements are made without any one but the court to inquire of their correctness; they are, in part at least, made to enable the court to make proper orders in the estate. It would be dangerous to give to these settlements the force and effect of final judgments and thus put it out of the power of the court to correct mistakes and over-charges, and we conclude the statute does not contemplate such results, and that they are only *prima facie* evidence of their correctness.

3. The next question is whether these sureties on the second bond should be held liable for any excessive commissions retained by and allowed to the guardian in the previous annual settlements. The probate court has

power to require the guardian "to give a new bond, or additional security." The bond in this case is a new one and it is conditioned that said Jones "shall take due and proper care of said Jas. H. Locke and manage and administer his estate," etc. The general rule is that sureties are not liable for past defaults unless made so by the terms of the bond. *Farrar v. United States*, 5 Peters, 373; Murfree on Official Bonds, sec. 300. This rule evidently applies when the bonds are given during the same appointment or term of office, as well as where there are different bonds under successive appointments. There is nothing in this bond, or the statute under which it was made, which gives to it a retrospective operation. The plaintiff cites several cases in this court, to show that there was a default after as well as before the date of the second bond. *State to use v. Fields*, 53 Mo. 474, and *Haskell v. Farrar*, 56 Mo. 497, only hold that sureties on the first bond are not relieved by a second, given upon an order made by the court of its own motion. In *State to use v. Drury*, 36 Mo. 282, the curator made breach of the first bond by converting the money of the ward to his own use. He gave a second bond and carried the amount of money before converted into his subsequent settlements, so that the sureties on that bond had been held liable and a judgment had been rendered against them; all this it was held did not relieve the first sureties because the breach was made under the first bond. In *State to use v. Berning*, 74 Mo. 88, the executor pledged certain notes of the estate with a bank to secure his personal debt; after that he gave a second bond and the notes were with the bank and not paid until long after that bond was given. The sureties on the first bond were held liable though the bank took no title to the notes, and though there was a breach of the second bond also for a failure on the part of the executor to reclaim and recover the notes as he might and ought to have done. Now in the case at bar the

commissions allowed before the execution of the second bond were claimed and allowed in the previous settlements. That was an open declaration of the guardian that the money was his own, and an appropriation thereof to his own use. These allowed commissions were never carried into any subsequent settlement. To hold these second sureties liable therefor, under these circumstances, is to wholly disregard the rule that sureties are not liable for a past default. *Prima facie* the allowances were correct, and the sureties had a right to assume that they were correct. If it should be found that those commissions, set apart in the settlement before the execution of the second bond, are excessive, still these sureties should not be held liable therefor.

4. Other exceptions were taken to the report of the referee because of a refusal to allow certain notes and due-bills as a credit, which came to the guardian when first appointed, and which, it is claimed, could not be collected with diligence. The difficulty, and it seems to be recognized by counsel for defendants, arose from the peculiar state of the pleadings, and the failure of defendants to make proof of the matters alleged in the answer and put in issue by the reply. As the judgment must be reversed and the cause remanded for new trial, for the reasons before stated, this exception need not be considered. The proof can be made and the pleadings reformed if desired. The judgment is reversed and the cause remanded for a new trial. All concur, except Sherwood, J., who dissents.

SHERWOOD, J., DISSENTING.—I do not concur in one point of the foregoing opinion. It has always been my understanding of the matter, that probate courts were creatures of the statute, and could do nothing except where the statute gave power so to do; and even where they have jurisdiction to act, such jurisdiction

must be exercised in the manner prescribed by law, and not otherwise, and that such courts take nothing by implication. *Powers v. Blakey's Adm'r,* 16 Mo. 437; *Lake v. Meier,* 42 Mo. 389; *Coil v. Pitman's Adm'r,* 46 Mo. 51; Kelley Prob. Guide, sec. 123; *Baldwin v. Whitcomb,* 71 Mo. 651; *Jefferson Co. v. Cowan,* 54 Mo. 234; *Riggs v. Cragg,* 89 N. Y. 479; *Davidsburg v. Ins. Co.,* 90 N. Y. 526; *Fiester v. Shepard,* 92 *Ib.* 251. And as a consequence of this position, it must needs follow, that whenever the statute prescribes that an order be obtained by a guardian, etc., from a probate court to do a certain act, and this be not done that the probate court, by a subsequent order, cannot confer on the unauthorized act of the guardian, etc., a retrospective validity.

The majority opinion seems to rest upon cases where an informal approval of an administrator's sale of land has occurred. I take it that there is wide distinction between that class of cases and the present one. There the order of sale was regularly made after the taking of all necessary precedent steps; the sale occurred with the observance of all legal formalities, and the only question was whether approval of the court had sanctioned the sale. The *statute* in such cases requires no *order of approval;* approval is manifested in such cases, by the *failure* to order a *new sale* (sections 168, 169), and by acts and entries repugnant to the idea of approval. Here, on the contrary, no order at all is made, but reliance is sought on the approval of an act *confessedly unauthorized* when done. It has been expressly held by this court, that without an order of sale was made, an approval of such sale was a nullity. *Evans v. Snyder,* 64 Mo. 516. Now, if it be true that probate courts must exercise their jurisdiction in the *manner prescribed by law,* and that law requires that an order be made that a given act be done, subsequent approval of the act will not answer in lieu of prior authorization; and it makes no matter what the char-

acter of the act is, which requires a prior order, subsequent approval cannot make valid what was before void, and I do not concur in overruling *Michael v. Locke, supra.* I think we have enough slip-shod mismanagement of estates without giving such things judicial encouragement.