N. B. FROST, Appellant, v. A. J. REDFORD, Respondent.

54 345
127m494

Kansas City Court of Appeals, May 15, 1893.

1. **Insane Persons:** GUARDIANS: TRUSTEE: EFFECTS: DEBTS. The guardian of an insane person occupies the position of trustee for him as well also as for his creditors and family, and should take possession of his affects and should adjust, settle and pay his debts as far as his effects extend, having regard to priorities, and if the estate is insufficient then *pari passu*.

2. ———: PRESENTATION OF DEBTS: NOTICE: STATUTE. The statute contemplates a presentation of claims to the guardian, and when necessary it is the probable duty of the guardian to give notice to creditors to present their demands for adjustment and payment.

3. ———: PREFERENCE AMONG CREDITORS: PAYMENT: MEASURE OF DAMAGES. The guardian of an insane person cannot prefer the creditors of his wards as his ward could; and his payment of a per cent. on all demands excepts that of plaintiff of which he had notice was a breach of his duty; and the measure of his liability is the per cent. he should have paid plaintiff nad he paid all equally and equitably. GILL, J., *dissenting*.

4. ———: REMEDY OF PRETERMITTED CREDITOR AGAINST GUARDIAN: MONEY HAD AND RECEIVED: ACCOUNTING. An action against a trustee for money had and received will lie if the trust is closed, but it is otherwise if there has been no final accounting. But where the estate is exhausted,—practically closed,—equity has a general jurisdiction of the guardian of an insane person whose position and obligation are wholly fiduciary and will direct an accounting and final settlement to determine the amount of his liability.

Frost v. Redford.

5. ————: COMMON LAW: STATUTE: ALLOWANCE FOR SUPPORT: EQUITY: PREFERENCE: EXECUTION: SETTLEMENT: RES ADJUDICATA.

*Per Ellison, J., Concurring.*

(1) At common law the king as *parens patriæ* had the protection in a peculiar manner of all those who by reason of their inability and want of understanding are incapable of taking care of themselves, and this protection was administered through the chancellor and a committee of the person and estate of the insane person.    The first and paramount duty of this protection was to provide for the personal ease and comfort of the lunatic to the exclusion of the payment of his debts.

(2) Under the Missouri statute the guardian can use his ward's estate for the payment of his debts to the exhaustion of the estate except as it is protected by homestead and exemption laws, and the ultimate maintenance of the ward may fall upon the county.

(3) An allowance cannot, if timely objection be made, be regularly set apart for the support of the lunatic, but if said allowance is made it will protect the guardian.

(4) Such guardian in paying the debts and administering the estate of a lunatic is governed by principles of equity and cannot prefer a creditor, since equity means equality.

(5) The real and personal property of a lunatic is not subject to an execution at the suit of a creditor who has obtained his judgment in an independent jurisdiction as it would amount to a. preference and interfere with the jurisdiction of the probate court.

(6) A settlement made by the guardian in the probate court, wherein plaintiff's claim is not mentioned, does not affect plaintiff's claim.

(7) The fact that plaintiff brought suit against the lunatic naming defendant as his guardian and recovering the judgment he sues on in this action, does not make the subject-matter *res adjudicata* in this action.

*Appeal from the Johnson Circuit Court.*—Hon. C. W. Sloan, Judge.

Reversed and remanded.

*J. W. Suddath* and *Samuel P. Sparks*, for appellant.

(1) Guardians of insane persons are trustees and are governed by the law pertaining to trustees. *Michael v. Locke*, 80 Mo. 551; *State to use v. Jones*, 89 Mo. 478. (2) Trust funds in the hands of trustees are to be managed and disposed of by them for the equal benefit of all creditors. *State ex rel v. Brockman*, 39 Mo. App. 131, and cases cited. (3) A power given to a trustee to pay such creditors and prefer such claims as he pleased would render the trust void. 2 Perry on Trusts [2 Ed.] sec. 600. (4) The statute makes it the duty of the guardian of an insane person to pay all debts due from his ward so far as his estate and effects will extend. Revised Statutes, 1889, sec. 5530; *Conant v. Kendal*, 21 Pick. (Mass.) 36–41.

*O. L. Houts*, for respondent.

(1) Guardian of insane person chargeable as trustee at suit of creditor of the ward until there has been an accounting and a balance found in the guardian's hands. *Davis v. Drew*, 6 N. H. 399; s. c.; 25 Am. Dec. 467. And certainly when as in the case at bar there has been an accounting and a balance found due respondent from the estate of his ward respondent is not liable to appellant, a creditor of the ward. (3) The statutes of this state do not authorize a recovery in this suit, nor do they require the guardian of an insane person to pay the debts of his ward *pro rata*, or provide for the probate classification or priority of the debts of an insane person. Revised Statutes, 1879, ch. 86; *State to use v. Jones*, 89 Mo. 470 (overruling *Michael v. Locke*, 80 Mo. 548.) Statute specifically provides that no process shall go against a guardian for the debt of his ward, but against the property of the insane per-

son only. Revised Statutes, sec. 5544; *Crow v. Weidner*, 36 Mo. 412; *Collier v. Cairns*, 6 Mo. App. 188; Revised Statutes, 1889, secs. 64, 67, and note; Revised Statutes, 1879, sec. 65. (3) If appellant has a right of action he has mistaken his remedy. He should have issued execution on his judgment and levied on the property of E. D. Frost, the insane person, if he had any, or garnisheed respondent. Revised Statutes, sec. 5544. Action on respondent's bond is the only action at law that appellant could probably maintain. The only duty respondent could in any way owe appellant grows out of the obligation of the bond. (4) Respondent does not, in his conception, need the benefit of the proposition, but he insists that the case of *N. B. Frost v. E. D. Frost and A. J. Redford*, this respondent is *res adjudicata* as to every issue in this case. In that case appellant sued respondent and asked judgment against him, and was defeated on the original and same cause of action he now sues on, the note on which the judgment was founded. If appellant was entitled to recover against respondent, he could have recovered as well on his note as on his judgment.

SMITH, P. J.—This was an action at law based upon a judgment recovered by the plaintiff against Ebenezer D. Frost, who had previously been adjudged insane. The petition alleged, amongst other things, that the defendant had been appointed guardian of the person and curator of the estate of said Frost, and had duly qualified as such; that there came into the hands of said defendant, as such curator, the sum of $10,000 in cash and personal property, and that the plaintiff at the time of the defendant's appointment gave the latter notice of his claim and demanded payment thereof. The answer admitted the defendant's appointment and qualification as guardian and the recovery of said

judgment, but denied the other allegations of the petition.

There was a submission of the case to the court and a separate finding of facts and conclusions of law by it, which (omitting the facts admitted by the pleadings) was as follows: "That there came into his hands as such guardian and curator prior to the commencement of this suit in cash and other personal property the sum of $4,216.25. That this suit is based on a debt exisiting due and owing by said E. D. Frost to plaintiff N. B. Frost at the time he was so adjudged insane, which was reduced to judgment in this court on the seventeenth day of February, 1891, in a suit thereon against Ebenezer D. Frost, to which action said defendant herein (Redford) appeared and defended as guardian, and the amount of said judgment was $2,353.75, bearing interest at the rate of six per cent. per annum.

The court further finds that in December, 1888, or at least prior to January 29, 1889, date of sale, plaintiff N. B. Frost gave the said defendant Redford notice of the said demand so due and owing by said E. D. Frost and demanded payment thereof, which demand was refused by said Redford; that, at the time said E. D. Frost was adjudged insane, he was indebted and owing to divers parties, including this plaintiff, in the aggregate, the sum of $12,069.05. It does not affirmatively appear whether there were any other debts or not, that after notice of plaintiff's demand, to-wit, between February 16, 1889, and June 5, 1886, defendant paid out on a portion of said indebtedness to some of the creditors the sum of $1,639.87, but paid plaintiff nothing whatever on his demand; that the suit culminating in this judgment of the seventeenth day of February, 1891, herein before referred to was commenced May 25, 1889. The court further finds that the said Redford as guardian distributed and disposed of said

assets so received by him belonging to his said ward in the manner, to the persons, in the amounts and at the time as stated in defendant's answer. The court further finds that on March 30, 1891, the said defendant Redford as such guardian and curator, made report of his said receipts and distributions to the probate court, except as to the last ten items above named, which said report was by said court approved, but that no notice of any sort to any person whatever was given of said settlement. The court further finds that the probate court did on February 18, 1889, make an order: "That said guardian keep and set aside $1,000 for the care and keeping of said insane patient, support of family and education of children."

That the defendant, Redford, has never paid anything to this plaintiff on said demand, nor on the judgment aforesaid; that the same and every part thereof is still due and owing.

On the foregoing facts found and the pleadings in the case, the court declares the law to be, that this is an action at law against defendant Redford as a trustee in charge of a trust fund liable to be applied in payment of plaintiff's demand, and not against him as guardian. That the report of the probate court of his said disbursement and the approval of the same by the court precludes plaintiff from recovering in this action, although plaintiff was denied any participation in said dividends or disbursements. The court is of the opinion and holds and decides a matter of law, that a guardian and curator of an insane ward's estate in managing the estate of such ward especially when authorized or permitted by the probate court might preserve, manage and disburse his personal estate about the same as his ward could, if sane and in control thereof. It follows, that in the absence of fraud the finding and judgment must be again at the plaintiff."

The plaintiff has appealed. With the finding of facts there can be found no just ground of complaint.

The only question in the case is, whether the conclusion of law is correct. The defendant being the guardian of said insane person occupied the position of trustee for him, as well also, as for his creditors and family. *Michael v. Locke*, 80 Mo. 551; Perry on Trusts, sec. 1097. And so being it was his duty, under the statute (secs. 5526, 5530) to take into his possession the goods, chattels, moneys and effects of the ward, and to collect the debts due him and to *adjust, settle and pay off all demands due or becoming due from his ward, as far as his estate* and effects would extend. Undoubtedly if this language of the statute has any signification whatever, it is that the duty of the guardian is to pay all the demands against his ward, having regard to priorities, in full, or if the estate is insufficient for that purpose then to pay them *pari passu.* Of course this would be of difficult accomplishment in every case, in view of section 5544, which provides that judgments may be recovered and executions issued thereon against an insane person. It is plain when we look at the provisions of chapter 86, that the intention of the legislature by the enactment of this statute was to provide an elaborate scheme for the administration of the estates of insane persons. It is true the analogy of this statute to that in respect to administration of the estates of deceased persons in many essentials is lacking. The generel purpose of the latter statute is to wind up the estate, pay off the debts and turn over the remainder of the property to those entitled to the succession. To that end creditors are required to prove up their demands within a specified time or be forever barred.

In the case of insane persons the ward continues to be the owner of the property. The statute as to his

debts makes no provision for their presentation, classification or allowance. But while this is true there ought ordinarily to be no difficulty in ascertaining the demands due by the ward. The notice the guardian is obliged to give of his appointment and the other steps required by the statute to be taken by him would no doubt enable him to discover the creditors of his ward. The creditors of such persons are usually quite swift in making their demands known. There is always that degree of insecurity and uncertainty felt by creditors of such persons that would prompt them to present their demands to the guardian to be "adjusted, settled and paid."

The very language of the statute just quoted shows that it contemplates a presentation of the claims of creditors to the guardian or else how could the same be "adjusted, settled and paid." It is probably the duty of the guardian to give notice when necessary to the creditors to present their demands to him for this purpose. When the amount of the claims due and to become due by the ward are ascertained by the guardian, he having charge of the ward's estate can experience very little trouble in determining under the supervision and orders of the probate court whether the estate is sufficient to pay the claims of all the creditors in full or only a per cent. thereon. In making payment he might exercise the precaution to take a refunding bond in case he should be uncertain as to whether there were other unpresented claims or whether the estate will finally be sufficient to pay each creditor the per cent. which it then seems he can pay.

A prudent and careful business man in charge of the estate of an insane person ought not to have any serious difficulty in administering such an estate under the statute. Ordinarily he could provide and protect an estate against sacrifice by a creditor having an exe-

cution. Such an execution creditor might by its levy secure a priority, and in that case the adjustment and payment of the claims of the other creditors having no priority would have to be made with reference to the existing conditions. It follows therefore that the payment by the guardian in this case of a per cent. on all the demands against his ward, except on that of the plaintiff, was a breach of his duty. The measure of his liability undoubtedly is the per cent. that he should have paid plaintiff had he paid all equally and equitably.

I do not think, in view of section 5530 and the other sections of chapter 86, that a guardian can prefer the creditors of his ward as the ward could have done himself had he not been insane. I think the scope and language of the statute discountenances this idea. In this case the guardian has exhausted the ward's estate and has paid the plaintiff no part of his demand, though he could have paid a part of it had he wished to do so. The question now is what is the plaintiff's remedy. If it is a fact, appearing from the guardian's settlement or otherwise, that the estate was able to pay any given per cent. on all of its debts and that he had exhausted the estate without doing so, or that any specified sum was in the hands of the guardian held by him for the plaintiff's use, it could be recovered in an appropriate action at law, or at any rate in an action for money had and received. An action against a trustee for money had and received will lie if the trust is closed, but otherwise if there has been no final accounting. Perry on Trusts, sec. 843; Hill on Trustees, *518–847.

In this case the guardian shows the estate exhausted—nothing in his hands. It is practically closed so far as creditors are concerned. Guardians of

persons *non compos mentis* stand in the relation of *quasi* trustee to their ward or principals. They do not hold the title to the property which is the subject of the relation, but their position and obligations are wholly fiduciary. Equity has therefore a general jurisdiction at the suit of the ward or other beneficiaries to compel a performance of the trust duties to relieve against violations of the trust obligations to direct an accounting and final settlement of the *quasi* trust and to grant other special relief made requisite by the circumstances. Perry on Trusts, sec. 1097; *Moody v. Bibb*, 50 Ala. 245; *Stephens v. Marshall*, 23 Hun, 641; *Strumph v. Guardian of Pfeiffer*, 58 Ind. 472; *Coles, Com'r, v. Coles, Adm'r*, 8 Gratt. 365.

It would be impossible to determine the per cent. to which plaintiff is entitled to recover on his claim until there shall be an account taken of the administration of said ward's estate and the amount thus ascertained.

To the end that such an account be taken the judgment will be reversed and the cause remanded with leave to plaintiff to amend his petition if he so elects to do. ELLISON, J., concurs and GILL, J., dissents in separate opinions.

ELLISON, J. *(concurring)*.—The defendant's ward was adjudged insane and defendant appointed his guardian on the fifth of July, 1888. When defendant took charge of the estate he found that the ward was indebted to various parties, among others to this plaintiff. Plaintiff obtained a judgment on his claim after the ward was adjudged insane, the defendant herein defending as guardian. There were not sufficient assets of all kinds belonging to the ward's estate to pay all his debts in full. Defendant paid a portion of several debts to other creditors but refused to pay

any portion of plaintiff's judgment debt notwithstanding he had notice of it. Plaintiff has brought this suit against defendant individually on the foregoing state of facts. The court below found against him and he comes here for relief.

The trial court declared the law to be that the guardian could prefer a creditor to the entire defeat of the claim of another creditor of equal dignity. The trial court further declared that the approval of the annual settlement of the guardian by the probate court wherein the disbursements to the preferred creditors were shown, protected the guardian notwithstanding the guardian made no mention of plaintiff's claim in such settlement. The case requires the consideration of several questions in relation to the duties and liabilities of guardians of insane persons. That defendant was a trustee and that he held the ward's estate in the nature of a fund for the benefit of the ward and his creditors I have no doubt. Nor have I any doubt that he would be liable for an inexcusable breach of that trust.

In all civilized countries care of the insane has been an object of much solicitude. The pity and sympathy which finds a response in the breasts of all from the first civilization has manifested itself in the promulgation of rules of law or equity devised for the protection and care of these most unfortunate of human beings. "It seems to be agreed at this day that the King as *parens patriæ* hath the protection of all his subjects, and that in a more peculiar manner he is to take care of those who by reason of their inability and want of understanding are incapable of taking care of themselves"—Idiots and Lunatics, Bacon's Abridgements. The same eminent author also said that, "The first paramount rule in lunacy is to provide for the personal ease and comfort of the

lunatic." From the inability of the King to give attention to these unfortunates it was deputed to the chancellor, who in practice referred the case to a master to approve of a proper person to act as a committee of the person and estate of the insane person. In this country the states have laws for the protection of the insane; and while the detail of such matters is not uniform in regulation, yet all the states, so far as my observation goes, have evidenced the same anxious care for such persons which is found to exist in other civilized communities. In Missouri the constitution places the jurisdiction over these people primarily in the probate court. That court appoints the guardian who fills the place of him who in England and many of our states is called the committee. The primary duty of the guardian (unless otherwise controlled by the statute) is to protect and maintain his unfortunate ward with the estate which may come into his hands, even to the exclusion of the claims of creditors, if this should be necessary for the ward's maintenance. This is the effect of the observations of Bacon above quoted and it is supported by the cases of *Eckstien's Estate;* 1 Parsons Equity Cases, 59, 63; *In the Matter of Latham,* 4 Ired. 234; 6 Ired. 406; *Adams v. Thomas,* 81 N. C. 296; *Smith v. Pitkin,* 79 N. C. 567; *Ex Parte Hastings,* 14 Vesey, 182. In the latter case Lord ELDON said, "I have no authority to pay the debts of the lunatic unless I see it is for the accommodation of the estate. I cannot pay his debts and leave him destitute of any provision. * * * There is no instance of paying the debts of a lunatic without reserving a sufficient maintenance for him. * * * These orders are made for the accommodation not of the creditor but of the lunatic." In 4 Ired. *supra,* the North Carolina court said that: "All the lunatic's estate has been converted into money, and only the sum of

$942.14, is now within reach of this court. We think that this fund must be retained by the committee, not to pay his balance or the debts of any creditors, but for the purpose of maintaining the lunatic and his wife and (tender) infant children. That the court must reserve a sufficient maintenance for the lunatic before making an order for the payment of debts or allowing to the committee sums already applied by him to that purpose is clear from the nature of the jurisdiction in lunacy, as well as from the decisions." It is evident that the insane person must be maintained or he will perish. If not maintained by his own estate he will become a public charge. If his own estate is taken up by creditors he becomes a public charge. I take it that no creditor has the right to strip the insane of their effects beyond the point of maintenance and the probate court's allowance for the support of the ward was proper unless the creditor's right is conferred by statute.

In this state, the statute for the protection of insane persons provides, Revised Statutes, 1889, section 5545: "If the estate of any such insane person shall be insufficient to pay his debts, to maintain himself and family or educate his children, his guardian may apply to the county court of the proper county by petition setting forth the particulars and praying for an appropriation from the county treasurer for the support of his ward. Sec. 5546. The petition shall be accompanied by a true and perfect account of the guardianship, an inventory of the estate and effects, and a list of the debts due from such insane person, and it shall be verified by the affidavit of the petitioner. Sec. 5547. If the county court shall be satisfied that such estate and effects are insufficient for the purposes above specified, such court may order such sum to be paid to the guardian out of the county

treasury as to them shall appear reasonable, and cause a warrant to be issued accordingly."

From the terms of these sections, construing them with our homestead and exemption laws, my opinion is that the guardian, in so far as his ward's estate is concerned, can use such estate for the payment of the ward's debts down to the exhaustion of the estate, except as it would be protected by homestead or exemption laws, if it should be of that character. The ultimate maintenance of the ward would, therefore, under this statute fall upon the county. *German National Bank v. Engeln*, 14 Bush. 708. So if a lunatic was the owner of a thousand acres of wild land as his entire estate, creditors could practically exhaust the whole of it and thus throw the lunatic upon the county. Under the statute cited, the reason for the rule excluding creditors as stated in the foregoing authorities does not exist, since the care and protection of the ward is plainly provided for at public expense. The legislature has deemed it expedient to put the burden of the ward's support upon the county rather than to disable the creditor from collecting his demand.

It follows then under this construction of the statute that if the estate was insolvent and the proper showing was made at the proper time the probate court should not have made the allowance of $1,000 for the support of the ward. But I am of the further opinion that since the allowance was made (the probate court having jurisdiction of the matter) it is merely erroneous action and will protect the guardian in the use of that amount of the estate for that purpose.

It is next contended by the defendant guardian that he is not required by the just terms of his trust to pay to creditors *pro rata*, but that he may prefer them as the ward might have done when sane. I do not think such contention is sound. In my opinion it is

contrary to the spirit of the original rule governing the care of the insane and the management of their estates as well as inconsistent with the statutory scheme which we have in this state. The guardian is a trustee. *State to use v. Jones*, 89 Mo. 478. And under our statute he is a trustee for the creditors. Under a statute of New York similar as respects the payment of debts he was held to be clothed with a trust for the benefit of creditors and an agency for the payment of debts and the administration of the estate. *Beecher v. Van Gortland*, 2 Johns. Ch. 246. He is governed by the principles of equity and cannot favor or prefer a creditor unless there be something in the nature of the debt requiring it. Equity in governing the conduct of a trustee clothed with the trust of paying debts from a trust fund means equality. *State ex rel. v. Brockman*, 39 Mo. App. 131. It has therefore been held that the creditors are to be paid *pro rata* and not by preference, unless the nature of the debt is such as to require it, as if it be a mortgage or other lien debt made before lunacy. *Wright's Appeal*, 8 Barr. 57; *Eckstien's Estate*, 1 Parson's Equity Cases, 59; *Ex Parte Latham*, 6 Ired. 406; and this is equally true where the debt is represented by a judgment obtained after lunacy as in the case at bar. Authorities *supra*.

It is true that it is held that suits may be brought against insane persons and the judgments thereon will not be void (*Heard v. Sack*, 81 Mo. 610) and that an execution sale to a party not advised of the insanity will pass title in the property; yet I judge these rulings to refer to that class of insane persons not under guardianship and who have not been formally adjudged to be insane. It is likewise true that the statute, sec. 5544, contemplates that there may be judgments and executions against an insane person or his guardian as such; and from this it may be suggested that it is

allowable for a creditor to be swift by obtaining a judgment and executing property. And that since he is thus permitted to force a preference he could be allowed a preference by the voluntary act of the guardian in preferring him. Such position is not tenable; the section of the statute referred to does not justify such course or result. There is an elaborate mode laid down by statute for the sale of the ward's real estate under the supervision of the probate court, and this mode is exclusive. *Rannels v. Gerner*, 80 Mo. 474. An execution on a judgment against a party who has been adjudged insane before judgment cannot be utilized for the sale of the ward's real estate.

As to personal property, while I will not say that a guardian cannot dispose of it for the purposes of the trust without an order of probate court, yet I do maintain that such personal estate is not subject to an execution at the suit of a creditor who has obtained his judgment in some independent jurisdiction. If he could it would amount to permitting a preference of creditors, and the unseemly spectacle of a race between creditors, each urged by the fear of success in the other, so forcibly deprecated in *Eckstien's Estate, supra,* would inevitably follow. The result would be that the management and administration of the ward's estate would be taken from the hands of the guardian and out of the forum of the probate court where the constitution has placed it. It will be observed from the authorities herein before cited that where in other states the ward's property has been disturbed or threatened by execution that the creditor has been restrained, to the end that the court and guardian designated by law might administer the estate. The right to sue the guardian which seems to be contemplated by the statute now under consideration is yet a valuable right notwithstanding the views here expressed. The cred-

itor may establish his demand by such suit. He may have the verdict of a jury thereon and thereby establish the legality of his claim over the head of the guardian. A broader statute in favor of the creditor in this respect than ours in other states has received this construction. *Wright's Appeal* and *Eckstien's Estate, supra.*

In this case the trial court held as stated at the outset that since defendant reported to the probate court at his annual settlement the disbursements of the estate to creditors, in which plaintiff's name or claim did not appear, and that these disbursements were approved by the probate court plaintiff could not recover. This I think was erroneous. It was a mere annual settlement and defendant made no mention therein of plaintiff's claim, notwithstanding he had notice of it. The probate court made no adjudication thereon. There has been no final settlement and the annual exhibit of the guardian here shown to have been approved by the probate court by no means amounts to an adjudication of plaintiff's claim; nor does it amount (as against plaintiff) to an approval of the payment of all the funds to other creditors. The case therefore stands upon the action of the guardian alone, and that action was a refusal to allow plaintiff a *pro rata* with the other creditors. The defendant, as we have hereinbefore stated, is a trustee for the creditors, handling a trust fund for their benefit. He has violated or abused that trust by an unequal and partial division of the fund, resulting in plaintiff's losing all of his claim. I think that for this he is liable and liable to an action at law. There are frequent cases of close analogy to this where an action at law is sustained, though in such action a *defense* might be made whereby the equitable jurisdiction of the court might be invoked in order to arrive at a proper adjustment of the guardian's accounts.

I ought to further remark that notwithstanding it appears to be the policy of the statute to charge the public with the maintenance of the lunatic rather than defeat creditors, yet there may be many cases where the guardian must necessarily maintain the ward out of the estate before its condition is known.

I attach no importance to defendant's plea of *res adjudicata*. It seems that plaintiff brought the suit which resulted in the judgment for his claim against the ward by name and defendant as his guardian, and that the judgment was rendered against the ward only. This was certainly not an adjudication that the plaintiff had no claim against the ward's estate. The foregoing considerations lead me to favor a reversal of the judgment and remanding the cause.

GILL, J. *(dissenting)*.—I understand Judge SMITH in the foreoing opinion to announce the doctrine that a guardian of an insane person cannot be allowed to prefer any creditor of his ward; but in case the estate should prove insufficient to pay the debts in full then the guardian must pay *pro rata;* and failing in this then the guardian can be held at the suit of a neglected creditor for the proportion that would be coming to him on a *pro rota* distribution.

I must dissent from that position. The statute on insane persons relating to appointment, etc., of guardians by the probate court makes no such provisions (Revised Statutes, 1889, ch. 86), and I cannot understand why the courts should so declare. Unrestricted by statute, the right of an insolvent debtor to prefer one creditor over another—that is, to use his assets to satisfy one or more and altogether to deny others—is everywhere admitted. If then the preference here in dispute had been given by the ward in person (before adjudged insane or after his restoration) then there could be no

question of its legality, and the paid creditor or creditors could hold on to all they had received, even though the entire property of the debtor had been exhausted.

Now the guardian of an insane person, appointed under our statute, stands in the place of the lunatic. He is placed in charge of the estate to manage and conduct its affairs subject of course to the orders of the probate court, but not to *wind it up* as in cases of administration of deceased persons. *State to use v. Jones*, 89 Mo. 470. There is a marked distinction between the duties of an executor or administrator and the guardian of one of unsound mind. In the former the object is to marshal the assets of the deceased—to close up finally his business and pay his debts, whilst in the latter the purpose is to hold and protect the business affairs of the insane person till restoration or death may come to his relief. In many cases the duty of the guardian is imperative to continue the business of the ward. This as already said is subject to the supervisory care of the probate court. *Jones Case, supra.* The statute law, too, has made a corresponding distinction between the manner of administering the two estates. In closing up and settling the estate of a *deceased* person provision is made for the allowance and classification of demands and for their *pro rata* payment if the estate proves insufficient to a full satisfaction; on the other hand the statute prescribing the management of the affairs of an insane person makes no provision for the presentment, allowance or classification of claims against it, but leaves this, with other matters concerning the interests of the lunatic, to the management of the guardian, who is subject to the superintending control of the court. If it was intended that the guardian should proceed to gather in the assets and pay the claims *pro rata*, it seems the like provisions that appear in the administration law would be found

inserted in the statute for the administration of the estate of insane persons. At common law the executor or administrator, it seems, might prefer one or more creditors over others of equal rank or degree ( Woerner on Administration, sec. 376); and it is therefore only because of the statute that such is not still the rule. If then such was allowed in ordinary administrations on the estates of deceased persons, it ought very clearly to be permitted in the matter of conducting the affairs of an insane person's estate.

Again, a creditor of the ward may bring suit, and have judgment with right of levy and satisfaction out of the property of the insane person. Revised Statutes, 1889, sec. 5544. This is quite contrary to the idea that the assets shall be distributed *pro rata*. For it may be that the judgment thus enforced by execution may absorb the entire property and this would result of course in a preference. And if a preference can thus indirectly be accomplished, why not directly, through and by means of the voluntary act of the guardian?

And again, under the statute as it existed prior to 1883, for the settling of insolvent partnership estates, the surviving partner was not required to pay claims *pro rata*, but was permitted to pay in full such as he saw fit. *Crow v. Weidner*, 36 Mo. 412; *Collier v. Cairns*, 6 Mo. App. 190. In order to so provide for payment *pro rata*, the statute has since been amended. Revised Statutes, 1889, sec. 64. If now the surviving partner, administering the co-partnership estate, was thus, in the absence of a prohibiting statute, permitted to give preferences, on what theory can it be denied a guardian in charge of the affairs of one insane? In my opinion then, since the statute has failed to declare against preferences in the conduct or settlement of the affairs of an insane person, the guardian is not bound to pay *pro rata*, but may prefer one or more claims over others.