FROST, *Appellant*, v. REDFORD.

Division Two, March 18, 1895.

1. **Insane Person:** EXEMPTIONS: CREDITORS.   An insane person who is the head of a family is entitled to the same exemptions against creditors as a sane man similarly situated.

2. ——: ——: ——.   The creditors of such person are entitled to be paid, after allowing such exemptions, before any part of his estate can be applied to his maintenance or to the education and support of his children.

3. ——: CREDITORS: GUARDIAN.   An order of the probate court directing the guardian of an insolvent insane person to set apart $1,000 for the support of the ward and his family and the education of his children will protect the guardian in an action against him for a breach of duty in not distributing the fund among the ward's creditors, and this is true, although the court had no power to make such order.

4. ——: ——: ——: PREFERENCE.   The guardian of an insane person may prefer certain of the ward's creditors, as the ward himself might do, if sane.

*Certified from Kansas City Court of Appeals.*

REVERSED.

*J. W. Suddath* and *S. P. Sparks* for appellant.

(1) Guardians of insane persons are trustees, and are governed by the law pertaining to trustees. *Michael v. Locke*, 80 Mo. *loc. cit.* 551; *State to use v. Jones*, 89 Mo. *loc. cit.* 478. (2) Trust funds in the hands of trustees are to be managed and disposed of by them for the equal benefit of all creditors. *State ex rel. v. Brockman*, 39 Mo. App. 131, and cases cited. (3) A power given to a trustee to pay such creditors, and prefer such claims as he pleased, would render the trust void. 2 Perry on Trusts [2 Ed.], sec. 600. (4) The statute makes it the duty of the guardian of an insane person to pay all debts due from his ward, so far as his estate and effects will extend. R. S. 1889, sec. 5530; *Conant v. Kendal*, 21 Pick. (Mass.) 36–41.

*O. L. Houts* for respondent.

(1) Before the institution of plaintiff's suit, defendant had paid for his ward, and his creditors, $475.92 more than he had received, and he is not, therefore, liable to plaintiff in this, or any other action. And the fact that in paying his ward's debts he did not pay them *pro rata*, does not render him liable. *Frost v. Redford*, 54 Mo. App. 362; *State to use v. Jones*, 89 Mo. 470; R. S. 1889, chap. 86. (2) Our statutes are an absolute bar to plaintiff's recovery in this action against defendant. "In all actions commenced against such insane person, the process shall be served upon his guardian, and, on judgment against such insane person or his guardian, as such, the

execution shall be against his property only." R. S. 1889, sec. 5544. (3) At common law, the administrator of a deceased person, was not compelled to pay the debts of the deceased person *pro rata*. It is only by virtue of the statutes that he is compelled to do so now in this state. Woerner on Administration, sec. 376. (4) And under the statutes of this state, as they existed prior to 1883, for settling insolvent partnership estates, the surviving partner was not required to pay *pro rata*, but was permitted to pay in full such as he saw fit. *Crow v. Weidner*, 36 Mo. App. 412; *Collier v. Cairns*, 6 Mo. App. 190. In order to provide for payment *pro rata*, the statute has since been amended. R. S. 1889, sec. 64. (5) Defendant's plea of *res adjudicata* was fully made out. Plaintiff brought suit against E. D. Frost, the insane person, and the defendant in his original demand, asking judgment against both of them. Upon trial had, judgment was entered in favor of the defendant, which stands unreversed and unappealed from, and is, therefore, a bar to this action. The fact that plaintiff obtained judgment against E. D. Frost, the insane person, does not give him a new right of action against defendant on that judgment.

BURGESS, J.—From a judgment rendered in the circuit court, plaintiff appealed to the Kansas City court of appeals, where the judgment was reversed and the cause remanded, but, because of an apparent conflict in the decision of the case by the court of appeals, and the decision of this court in *State to use v. Jones*, 89 Mo. 470, the case was certified to this court. The case is reported in 54 Mo. App. 345. The facts, as stated by SMITH, P. J., are as follows:

"This was an action at law, based upon a judgment recovered by the plaintiff against Ebenezer D. Frost, who had previously been adjudged insane. The peti-

tion alleged, among other things, that the defendant had been appointed guardian of the person and curator of the estate of said Frost, and had duly qualified as such; that there came into the hands of said defendant, as such curator, the sum of $10,000 in cash and personal property, and that the plaintiff at the time of the defendant's appointment gave the latter notice of his claim and demanded payment thereof. The answer admitted the defendant's appointment and qualification as guardian and the recovery of said judgment, but denied the other allegations of the petition.

"There was a submission of the case to the court and a separate finding of facts and conclusions of law by it, which (omitting the facts admitted by the pleadings) was as follows: 'That there came into his hands, as such guardian and curator, prior to the commencement of this suit, in cash and other personal property, the sum of $4,216.25. That this suit is based on a debt existing, due and owing by said E. D. Frost to plaintiff N. B. Frost at the time he was so adjudged insane, which was reduced to judgment in this court on the seventeenth day of February, 1891, in a suit thereon against Ebenezer D. Frost, to which action said defendant herein (Redford) appeared and defended as guardian, and the amount of said judgment was $2,353.75, bearing interest at the rate of six per cent. per annum.

" 'The court further finds that in December, 1888, or at least prior to January 29, 1889, the date of sale, plaintiff N. B. Frost gave the said defendant Redford notice of said demand so due and owing by said E. D. Frost and demanded payment thereof, which demand was refused by said Redford; that, at the time said E. D. Frost was adjudged insane, he was indebted to and owing divers parties, including this plaintiff, in the aggregate, the sum of $12,069.05. It does not affirmatively appear whether there were any other debts or not;

that after notice of plaintiff's demand, to wit, between February 16, 1886, and June 15, 1886, the defendant paid out on a portion of said indebtedness, to some of the creditors, the sum of $1,639.87, but paid the plaintiff nothing whatever on his demand; that the suit culminating in this judgment of the seventeenth day of February, 1891, hereinbefore referred to was commenced May 25, 1889. The court further finds that the said Redford, as guardian, distributed and disposed of said assets so received by him belonging to his said ward in the manner, to the persons, in the amounts and at the time, as stated in the defendant's answer. The court further finds that on March 30, 1891, the said defendant Redford, as such guardian and curator, made report of his said receipts and distributions to the probate court, except as to the last ten items above named, which said report was by said court approved, but that no notice of any sort to any person whatever was given of said settlement. The court further finds that the probate court did, on February 18, 1889, make an order: "That said guardian keep and set aside $1,000 for the care and keeping of said insane patient, support of family and education of children."

" 'That the defendant Redford has never paid anything to this plaintiff on said demand, nor on the judgment aforesaid; that the same and every part thereof is still due and owing.

" 'On the foregoing facts found and the pleadings in the case, the court declares the law to be that, this is an action at law against defendant Redford as a trustee in charge of a trust fund liable to be applied in payment of plaintiff's demand, and not against him as guardian. That the report of the probate court of his said disbursement and the approval of the same by the court precludes plaintiff from recovering in this action,

although plaintiff was denied any participation in said dividends or disbursements. The court is of the opinion, and holds and decides, as matter of law, that a guardian and curator of an insane ward's estate in managing the estate of such ward, especially when authorized or permitted by the probate court, might preserve, manage and disburse his personal estate about the same as his ward could, if sane and in control thereof. It follows, that in the absence of fraud the finding and judgment must be against the plaintiff.' "

It will be observed that the petition contains no allegation of fraudulent conduct on the part of defendant as guardian, in failing and refusing to pay his demand *pro rata*, as he did other creditors, but the action is predicated of the fact alone that it was his legal duty to do so, and, because of his failure, he is personally liable to plaintiff for the amount to which he was thus entitled, and that he should have judgment against him therefor.

The statute in regard to insane persons makes no provision as to the order in which demands against such persons shall be paid, but by section 5530, Revised Statutes, 1889, it is provided that "it shall be the duty of every such guardian to prosecute and defend all actions instituted in behalf of or against his ward; to collect all debts due or becoming due to his ward, and give acquittance and discharges therefor, and to adjust, settle and pay all demands due or becoming due from his ward, so far as his estate and effects will extend, as hereinafter provided." Then follows a number of sections which pertain to real estate when owned by by such persons, but, as the ward in this case was not the owner of any such property, they have no bearing upon this controversy.

By section 5545, Revised Statutes, 1889, it is provided that in case the estate of such insane person shall

be insufficient to pay his debts, to maintain himself and family, and to educate his children, his guardian may apply to the county court of the proper county, for an appropriation from the county treasury for the support of his ward.

An insane person who is the head of a family, is entitled to precisely the same exemptions under our statute as a sane person similarly situated, and no more, and his debts must be first paid, after allowing such exemptions, before anything can be kept out of what remains of his estate to maintain the ward and his family or for the education of his children. He continues to be the owner of the property and may sue by his guardian, be sued and defend by his guardian, an execution may be issued against his property. R. S. 1889, sec. 5544. His property rights, and rights under the exemption laws, were not changed by reason of his being declared insane and placed under guardianship.

There is no pretense that defendant had, at the time of the commencement of this suit, any money or property in his hands belonging to his ward over and above the amount of $1,000, which he was ordered by the probate court to keep and set apart for the care and keeping of his ward, the support of his family and the education of his children. Whether or not that court had the power to make any such order until after all the creditors had been paid, defendant should be protected in complying with it, so long as it remains unchallenged. It was competent evidence to show, and does show, "that the business was carried on under the eye and supervision of the court, and that is sufficient." *State to use v. Jones*, 89 Mo. 470.

No one will question the right of defendant's ward to have preferred any one or more of his creditors before he became insane, and his guardian, in the absence of

any statutory restriction, or fraud, occupied the same position after his appointment and qualification as such guardian.

It follows, from what has been said, that the guardian committed no breach of his trust by reason of the causes assigned in plaintiff's petition. The judgment of the court of appeals is reversed and the cause remanded to that court, with directions to enter up judgment affirming the judgment of the circuit court. All of this division concur.